No. 36,380

NELLIE J. WATTS, *Appellant,* v. J. B. McKAY (Trustee), *Appellee.*

(162 P. 2d 82)

Opinion filed October 6, 1945.

*C. W. Burch, B. I. Litowich, LaRue Royce, E. S. Hampton,* all of Salina, *R. C. Woodward* and *H. Pauline Woodward,* both of El Dorado, were on the briefs for the appellant.

*J. B. McKay,* of El Dorado, was on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: The primary question presented by this appeal is whether the corpus of a certain testamentary trust estate may be reached by the divorced wife of the beneficiary to satisfy a judgment for alimony. The trial court found against the claimant and she appeals.

Questions involving the instant trust have twice been before us and we need not repeat the narrative contained in the former opinions. (See *Watts v. Watts,* 151 Kan. 125, 98 P. 2d 125; *Watts v. Watts,* 158 Kan. 59, 145 P. 2d 128.)

The issues here can be presented by brief recital.

The will of Mary D. Watts, a resident of Butler county, was admitted to probate on December 11, 1918. Part of her property

was left to Gardner Y. Watts and part in trust for the benefit of his son, Corwin Grant Watts, who was then about seventeen years old. She had reared Gardner Watts from his infancy, but neither he nor Corwin Watts was in any way related to her. The pertinent portions of the will containing the testamentary gifts to Corwin Watts were as follows:

"I give and devise and bequeath to A. L. L. Hamilton and J. B. McKay of El Dorado, Kansas, in trust for said Corwin Grant Watts, the undivided one-half interest in and to the following described real estate situated in Butler county, Kansas, towit: The south half of the southeast quarter of section thirteen, township twenty-six south, of range four east, including an undivided one-half interest in and to all oil and gas royalties, rents and other incomes accruing therefrom after my death, and I hereby *give and grant said A. L. L. Hamilton and J. B. McKay, or the survivor of them, full power to hold, manage, control, sell, transfer and convey the same, to reinvest the principal and the income therefrom from time to time,* and to do every act and thing necessary and proper to effectuate the trust herein created, and to carry out the directions of this will, and I *hereby direct such trustees to pay said Corwin Grant Watts, at such times as to them may seem necessary, such sums of money as shall in their judgment be necessary for the proper maintenance, support and education of said Corwin Grant Watts. After said Corwin Grant Watts arrives at the age of twenty-one years, such trustees are authorized and directed to turn over to said Corwin Grant Watts all of such property then remaining in their hands, when, in the judgment and discretion, said Corwin Grant Watts has attained sufficient business judgment, and otherwise shows himself to be capable of handling such property, but said trustees are directed to hold and invest such property as herein provided until they have determined said Corwin Grant Watts to be a suitable person to handle the same. . . .* I give, devise and bequeath to said Gardner Y. Watts the equal one-half part of all the rest, residue and remainder of my property, real, personal and mixed, wherever situated, to have and to hold the same unto said Gardner Y. Watts, his heirs and assigns forever, and *the remaining one-half part of such residue of my estate,* wherever situated, I give, devise and bequeath to said A. L. L. Hamilton and J. B. McKay, or the survivor of them, *in trust for said Corwin Grant Watts, to be held, controlled, managed and disposed of by them exactly as provided in paragraph Third hereof.*" (Italics supplied.)

Following admission of the will to probate the district court of Butler county assumed jurisdiction of the trust, with Hamilton and McKay, therein named, as trustees, and has since exercised jurisdiction. Upon the death of Hamilton, McKay became the sole trustee and has since continued as such. No complaint is made as to administration of the trust.

Corwin Watts and Nellie J. Watts, the appellant, were married in 1924, and in 1926 a daughter, Imogene, was born to them. In

1931, in appropriate proceedings, an order was made by the district court directing the trustees to pay $60 a month to Nellie Watts for the support of herself and child, and $40 a month to Corwin Watts for his support. In May, 1933, the order was modified to provide $50 a month for Nellie Watts and the child and $50 for Corwin Watts for his support. The modified order has since been in effect.

Sometime in 1943 Nellie Watts brought an action for divorce, alleging, *inter alia,* that since 1932 she and her husband had not lived together. On February 25, 1944, she was given judgment for divorce, and on July 14, 1944, a judgment for permanent alimony in the amount of $6,500 and for attorneys' fees in the amount of $500. The decree further directed the trustee to pay to the daughter Imogene $50 a month "as long as she remains a minor and unmarried," and that the plaintiff and her daughter should have the free use of the Wichita residence property belonging to the trust estate "as long as said child remains a minor, single, and resides with her mother in said residence." No appeal was taken from the judgment.

In August, 1944, appellant filed in the district court, in the trust proceedings, an application for an order to the trustee to show cause why he should not pay the judgment for alimony and attorneys' fees out of the trust estate. The matter was set for hearing. Corwin Grant Watts filed an answer asking that the application for such payment be granted. The trustee filed an answer, resisting payment out of the trust funds. It is not necessary to set out the answer in full. In it the trustee narrated the history of the trust in a general way and its administration; stated that the assets in his hands consisted of property valued at $23,380.20—subject to fluctuations in the amount of cash on hand—and an undivided half-interest in a half section of land, including a one-fourth interest in the one-eighth oil royalty being received under an oil lease. The trustee further averred that the surface interest in the land had no substantial value and that the trust receipts from the oil royalty were then about $90.07 a month but that the wells were deteriorating in productive capacity and that it was impossible to say how long production in paying quantity would continue. Further allegations of the trustee's answer were as follows:

"5. Said trustee denies that said trust property constitutes 'an asset in the hands of said trustee' belonging to said Corwin Grant Watts, and alleges the fact to be that *said last will and testament* of said Mary D. Watts *created a discretionary trust,* and that said sole trustee is charged with the duty and

responsibility of paying said Corwin Grant Watts, at such times as appears to said trustee to. be necessary, such sums of money as shall in the judgment of said trustee, 'be necessary for the proper maintenance, support and education of said Corwin Grant Watts,' and said trustee has no authority or discretion to apply the trust property to any other use or purpose, and his discretion as such trustee is not subject to the control of any. court except to prevent or correct an abuse thereof.

"6. Said trustee further alleges that Imogene Watts, the daughter of said Corwin Grant Watts and Nellie J. Watts, was married some time prior to July 14, 1944, and her husband is serving in the armed forces of the United States, and said Imogene Watts is receiving an allotment sufficient for 'her support.

"7. Said trustee further alleges that in the exercise of his discretion, he has determined and is of the opinion that said *Corwin Grant Watts will never 'attain sufficient business judgment' and otherwise show himself to be capable of handling such property,' and that said Watts is and always will be a spendthrift and utterly incapable of handling said property or of supporting himself.* and that it will be necessary to support said Watts out of said trust property for the remainder of his lifetime. That *in order to carry out the purpose and intention of said Mary D. Watts, it is necessary to conserve and preserve the corpus of said trust estate so that the same will be adequate to support said Watts for the remainder of his lifetime.* Said Watts is now approximately 42 years of age, and has a life expectancy far greater than the time said oil wells can reasonably be expected to continue to produce, and in the judgment and opinion of this trustee, it will become necessary in the not far distant future to support said Watts entirely out of the cash and securities in the hands of said trustee, the income from which is not now adequate for such purpose. That *if the property in the hands of said trustee should be depleted by the payment of said judgment* of Nellie J. Watts, and said fees awarded to her attorneys, *the property remaining in the hands of said trustee would be inadequate to support said Watts during the remainder of his life expectancy, and he would in all pobability become a public charge, thus doing the utmost violence to the purpose and 'intention of the testatrix, Mary D. Watts.*.

"8. Said trustee further alleges that said Corwin Grant Watts was not related to said Mary D. Watts in any degree, and was not one of her heirs at law. That said *Corwin Grant Watts has no vested interest in the trust estate, and upon his death, said trustee will hold said trust property upon a resulting trust in favor of the heirs of Mary D. Watts.* That this court could not render in this action or proceeding any judgment or order directing said trustee to pay said judgment or attorney's fees which would be of any protection to said trustee against the heirs of said Mary D. Watts, and there is therefore a fatal defect of parties, and this court is without power or jurisdiction to make or enter an order or decree of the character sought by said Nellie J. Watts.

"9. Said trustee further alleges that said Nellie J. Watts procured said Corwin Grant Watts to file his answer to said Application for an Order to Show Cause, in which he requests this court to order said trustee 'to pay said

judgment from said trust estate,' but that notwithstanding such answer so filed by him, said Corwin Grant Watts has both orally and in writing made demand on said trustee for the payment to said Watts of the sum of $100 per month by reason of the fact that said trustee discontinued payment of the sum of $50 per month to said Nellie J. Watts when said decree of divorce was entered. That the funds and property in the hands of said trustee are wholly insufficient to enable him to pay said judgment and attorney's fees, and to pay said Watts the sum of $100 per month." (Italics supplied).

Upon application of the petitioner the unknown heirs of Mary D. Watts were made parties to the action and notice was served upon them by publication.

At the hearing, the trustee testified as to the trust and its administration; stated that he had known Corwin Watts since about 1916 and had seen him frequently—on an average oftener than once a month during all those years; that "he is eccentric; has little if any business judgment, is completely unreliable and hasn't the faintest conception of the value of money"; that "in my judgment and opinion, as trustee, he is a spendthrift, using the word in the technical sense, and I see no possibility that he will ever cease to be a spendthrift"; that "it is my judgment at this time that I will never, in the exercise of my discretion as trustee, turn the corpus of this estate, or any part thereof, over to Corwin Grant Watts"; that he was well acquainted with Mary D. Watts, was her personal attorney and drew the will in question; that since Corwin Watts and Nellie Watts separated she had been allowed to occupy, rent free, the Wichita residence, in which she also operated a beauty shop and that the trust was paying the taxes and upkeep on the property; that in addition to the monthly payments of $50 Watts had been paid additional sums from time to time for various purposes, as shown by the accounts, and had frequently importuned both the trustee and the court for other allowances, which had been refused. Upon cross-examination he testified:

"Q. What is the fact as to whether in pursuance of your administering of this trust you have, from time to time, had to go into the principal or corpus of this estate? A. It has been invaded seriously."

No other witness testified.

The trial court found generally for the trustee, and that—

"(a) The trust created by the last will and testament of Mary D. Watts is a discretionary trust;

"(b) Corwin G. Watts has no vested interest in the trust estate, and that upon the death of said Corwin G. Watts, said trustee will hold the trust

property then remaining in his hands upon a resulting trust in favor of the heirs of Mary D. Watts;

"(c) The trustee has no duty, right or authority to pay the judgment rendered in favor of Applicant in the sum of $6,500 as permanent alimony, and the further sum of $500 for attorneys' fee;

"(d) In refusing to pay the judgment for permanent alimony and attorneys' fees, the trustee has not abused his discretion."

The order to show cause was dissolved, motion for new trial was made and overruled and this appeal followed.

Before considering the principal question we take note of appellee's contention that the proceeding was not one in which the unknown heirs of Mary D. Watts could properly be made parties and that if he should be ordered to pay the judgment out of the trust estate he would have no protection against any subsequent claims they might make. The unknown heirs of Mary D. Watts were properly made parties. The application for an order directing the trustee to pay the judgment was properly filed in the trusteeship proceeding and required determination of the meaning and effect of the testamentary trust provisions. The possible interests of the heirs, if any, of Mary Watts, were involved. But we need not discuss the question further since the conclusion presently to be stated as to the nature of the trust cannot adversely affect their interests. It is pertinent to say, however, at this point, that the trial court's finding that "upon the death of said Corwin G. Watts, said trustee will hold the trust property then remaining in his hands upon a resulting trust in favor of the heirs of Mary D. Watts" went beyond what was necessary in determining the question of whether the corpus of the trust estate in the hands of the trustee could be reached to satisfy the judgment. It may be argued that such a result would follow from the finding that Corwin Watts has no vested interest in the estate which can now be reached under the judgment. But no one can now say whether there will be any trust property remaining in the trustee's hands upon the death of Corwin Watts. Adjudication of such issues as may possibly arise upon the death of Corwin Watts should await that eventuality. Whether such possible residue of the estate would revert to the estate of Mary D. Watts, would pass to the heirs of Corwin Watts, or would escheat to the state is a question to be met when and if it arises, and when all persons then entitled to be heard may be made parties in a proper action. The finding on that question was premature and is for that reason set aside.

Both parties agree that in the construction of wills the primary consideration is the intention of the testator, and that intention is to be determined from examination of the instrument as a whole. (*In re Estate of Ellertson,* 157 Kan. 492, 497, 142 P. 2d 724.) The instant instrument presents no difficulty in that regard. Legal title to the property in which Corwin Watts was given a beneficial interest was vested in the trustees. The trustees were given plenary power "to hold, manage, control, sell, transfer and convey the same, to reinvest the principal and the income therefrom from time to time, and to do every act and thing necessary and proper to effectuate the trust." Trust funds were to be used "for the proper maintenance, support, and education of said Corwin Grant Watts" and it was left to the judgment of the trustees to determine what payments to him were necessary for that purpose. After Corwin Watts reached the age of twenty-one any residue then in the trust estate was to be turned over to Corwin Watts if and when "in the judgment and discretion" of the trustees he had "attained sufficient business judgment, and otherwise shows himself to be capable of handling such property." To give added force to that clear direction the testatrix added: "but said trustees are directed to hold and invest such property as herein provided until they have determined said Corwin Grant Watts to be a suitable person to handle the same."

Appellant contends that the instant trust is a "spendthrift trust" and that the general rule which prevents creditors from reaching the beneficiary's interest under such a trust is not applicable to a claim for alimony. (See 1 Scott on Trusts, ¶ 157 *et seq.*) The term "spendthrift trust"—which is frequently used rather loosely—is defined in Scott on Trusts (Vol. 1, p. 742) as one "in which the interest of a beneficiary cannot be assigned by him or reached by his creditors." It is there said: "The term is not altogether felicitous, since it is quite immaterial whether or not the beneficiary is in fact a spendthrift. The term does, however, connote the general idea that the purpose of the settlor in creating such a trust is to protect the beneficiary against his own folly or inefficiency or misfortune." We need not here pursue the broad question of restraints upon alienation. While "spendthrift trusts," representing one class of such restraints, are not permitted in some jurisdictions they have been upheld in this state. (*Sherman v. Havens,* 94 Kan. 654, 146 Pac. 1030; *Everitt v. Haskins,* 102 Kan.

546, 171 Pac. 632; *Bierer v. Bierer,* 121 Kan. 57, 60, 245 Pac. 1039; *Hinshaw v. Wright,* 124 Kan. 792, 262 Pac. 601.) Although such a trust is ordinarily created by specific provision in the trust instrument against power of alienation it has frequently been held that such intention on the part of the settlor may be inferred from the general context. (*Everitt v. Haskins,* supra; 26 R. C. L. 1268.)

There is a conflict of authority on the question of whether the interest of a beneficiary under such a trust may be reached to satisfy a judgment for alimony. (Griswold on Spendthrift Trusts, ¶ 339.) But in any event and whatever the name given to the trust, the beneficiary's interest must be a present and determinable one. We are here dealing only with the corpus of the estate. Clearly in that feature, at least, the instant trust falls within the general class of "discretionary trusts." As to such trusts it is said in Restatement, Trusts, Sec. 155:

"If by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal. . . . A trust containing such a provision as is stated in this section is a 'discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit."

To the same effect, it is said in 1 Scott on Trusts, p. 774:

"Where by the terms of the trust a beneficiary is entitled only to so much of the income or principal as the trustee in his uncontrolled discretion shall see fit to give him, he cannot compel the trustee to pay to him or to apply for his use any part of the trust property. In such a case, an assignee of the interest of the beneficiary cannot compel the trustee to pay any part of the trust property, nor can creditors of the beneficiary reach any part of the trust property. This is true even in jurisdictions where spendthrift trusts are not permitted. *If the beneficiary himself cannot compel the trustee to pay over any part of the trust fund, his assignee and his creditors are in no better position. It is the character of the beneficiary's interest, rather than the settlor's intention to improve a restraint on its alienation, which prevents its being reached."* (Italics supplied).

(Also, see 26 R. C. L. 1268; 65 C. J. 557.)

Certainly the instant trust is purely discretionary as to the principal, since—in the absence of abuse of discretion—the trustee may withhold it altogether from the beneficiary if in his judgment the beneficiary is not capable of handling it. The trustee's testimony as to lack of capacity was not controverted and no showing made that the trustee had abused his discretion.

The beneficiary has no right, as a matter of law, to require the trustee to turn over to him the principal of the estate or any part of it. It follows that the appellant—who married the beneficiary long after the trust had come into existence—cannot reach it.

The Kansas decisions—including all that have been called to our attention by the parties—have been examined and we find none inconsistent with the conclusion here reached. It would unduly extend this opinion to review them.

Appellant invokes the well-settled rule that the law favors the early vesting of estates and contends that under that rule the beneficiary's interest in the corpus of the trust estate should be held to be vested. But in none of the cases cited was an instrument construed as creating a vested estate where a contrary intention clearly appeared from the instrument itself, as it does here.

We conclude that Corwin G. Watts does not have such an interest in the corpus of the trust estate in the hands of the trustee as can be reached to satisfy the judgment for alimony and attorney's fees, and that the trustee did not abuse his discretion in refusing to pay such judgment.

The judgment dissolving the order to show cause and dismissing the application is affirmed.