LAURENCE I. DUNCAN, *Trustee v.* FLORENCE E. ELKINS *& a.*

*Willoughby A. Colby* (by brief and orally), for Florence E. Elkins.

PAGE, J. I. The first question transferred is "Has the petitioner authority to exercise the discretion with respect to investment conferred upon the former trustee who was the executor named in the will?" The original trustee was given "full power at any time to invest and reinvest and full power as to the character of the investments" of the fund of $8,000. When the settlor, as was the case here, fails to specify that successor trustees may exercise the powers conferred upon the original trustee, such powers can properly be exercised by successor trustees, when they are "not of a character leading to a conclusion of personal confidence reposed only in the named trustee." *Upton* v. *White*, 92 N. H. 221, 223. Nothing appearing to indicate a contrary intention, the petitioner may exercise the same powers as to investment and reinvestment that could be exercised by the original trustee.

II. "Has the petitioner authority to use principal in addition to income for the payment of the annuity bequeathed by paragraph Third of said will?" The paragraph named begins: "To my daughter, Florence, I give an annuity of three hundred and twenty dollars per

annum, payable in equal semi-annual instalments, for the term of her natural life." To "support and maintain this annuity," a trust fund of $8,000 was next created by the paragraph. Certain provisions were then made for the investment of the fund, and other terms of the trust were prescribed. The paragraph then ended thus: "At the death of my said daughter, Florence, said eight thousand dollars, together with any accumulated income thereon, shall go to my said daughter, Annie M." To Annie went an outright pecuniary legacy of $11,000; to Florence one of $2,000.

It is apparent that the testatrix desired her two daughters to benefit from her estate with substantial equality. But she expressed the desire to protect Florence by putting the bulk of the $10,000 she was allotted into the hands of a trustee. It may be that the testatrix assumed that the interest on savings bank deposits (then, in 1914, generally at four per cent.) would remain at that rate throughout the trust. On that assumption, the $8,000 fund would yield the prescribed annuity of $320, so that $8,000 and possibly some accrued interest would remain in the hands of the trustee at the time of Florence's death. Upon that assumption, which is the only one suggested, the primary will of the testatrix was that, as long as the payments were to be made at $320 a year, the benefit to Florence should be $160 each six months, as provided in paragraph three. The assumption that so much could be paid and still leave principal intact has proved to be erroneous, but we think that the assumption cannot control the primary intention that $320 annually should be at disposal for Florence's benefit during her lifetime. Under the original terms of the trust, the trustee had authority to pay $160 semi-annually and to draw from principal to the extent necessary. It was not a paramount intention of the testatrix to benefit Annie or her heirs at the expense of the provision for Florence, which was primary. Under the terms of the trust as altered (to be explained presently), the successor trustee has, since suit was brought, had discretion to expend a like sum, or any part thereof for Florence's benefit.

III. Harold C. Johnson has brought suit to recover $425 for the rent of his house occupied by Florence. Part of this rent accrued before the death of the original trustee, part after his death but prior to the appointment of the petitioner as trustee, and part after the petitioner's appointment. The suit was by trustee process served on the petitioner.

The Concord Family Welfare Society paid some of the rent, also for food, fuel, electricity and telephone for Florence's benefit, a total of

$507.91. Substantially all of this was furnished prior to the petitioner's appointment.

. The petitioner desires advice as to whether he may, in his discretion, apply the annuity to payment of the obligations of Florence, and in particular to the obligations, if any, to Johnson and the Family Welfare Society, and whether he may do so with or without Florence's consent and (a) in the absence of attachment, or any attempted anticipation, assignment or alienation of the annuity, or (b) during the pendency of the attachment made by Johnson.

The advice with reference to the Johnson claim will first be considered. By the original terms of the trust, as already stated, the beneficiary seemingly took an annuity. This would be property, and as such it could ordinarily be reached by her creditors by trustee process; though where the trustee has discretion as to what shall be paid to the beneficiary, sums in the hands of the trustee may not so be reached. *Brahmey* v. *Rollins*, 87 N. H. 290, 291, 293, 299-300.

The will of the testatrix provided, however, that the annuity should not be subject to attachment, assignment or alienation. Without more, this would have been a spendthrift trust, and under *Brahmey* v. *Rollins*, the trustee being without discretion as to payments to Florence, the annuity would be attachable for her debts. But immediately following this provision came another provision: "should any person attempt to attach said annuity or any part thereof or should said Florence attempt to anticipate, assign or alienate said annuity or any part thereof, in any way, or should said Florence refuse to accept said annuity or any part thereof, then it is my will that the executor [trustee] in his discretion may expend the same or any part thereof for the benefit of said Florence, in such manner as he may deem best or may pay the same over to my daughter, Annie M."

This last provision is for the modification of the trust into what is known as a "protective trust," the modification being executed upon the happening of an event named in the instrument of settlement from one where the beneficiary has a property right to receive income to one where the sums received depend upon the discretion of the trustee. This form of trust was apparently invented in England, where the right of a beneficiary is alienable in such situations as existed in *Brahmey* v. *Rollins*. Yet the "protective trust," set up by a modification similar to that provided by Mrs. Dow's will, is recognized in England as valid. Scott, Trusts, ss. 150, 155. Consistently with the English rule we have repudiated the argument that what a settlor may do by such a clause for a cesser or limitation over, or by an originally

discretionary trust, he ought to be allowed to without the use of any of those devices. The repudiation impliedly rests upon the supposition that a cesser clause and provision for a subsequent discretionary trust are valid. *Brahmey* v. *Rollins, supra,* 295-296. The validity seems to follow from the proposition that a settlor may reserve the power to revoke or modify a trust in the manner and to the extent stated in the instrument of trust. Restatement, Trusts, ss. 37, 330, 331; Scott, Trusts, ss. 129, 330.8, 331.

We therefore hold that the mere attempt by Johnson to attach the trust fund, when he took out his writ and ordered the officer to serve on the petitioner as trustee, resulted in the modification of the terms of the trust; it thereupon became a purely discretionary trust, and was a discretionary trust at the moment of the service on the petitioner. This has for a century or more been the view of the English courts, whose concepts regarding the strictly spendthrift trust we follow. *Godden* v. *Crowhurst,* 10 Sim. 642. This is not a spendthrift trust, and is not to be treated as such.

It results that, by reason of the pendency of the suit in which it is sought to reach funds in the petitioner's hands, the trustee may, without Florence's consent and independently of her refusal of or demand for the annuity as originally provided, pay such part of the rents due Johnson as in his sound discretion may have been "for the benefit of said Florence," to adopt the words of the testatrix. He will be guided in the exercise of his discretion, by the limitation of his power of expenditure as expressed in the will to, at most, $320 annually.

As to any claim that may be made by the Family Welfare Society, the trustee should base the exercise of his discretion, as in the Johnson case or any other, upon all of the factors in the situation, including the limitation of his right to expend, the existence of other claims, Florence's other needs, present and prospective, and particularly the question whether the aid furnished was with the expectation of repayment on a contractual basis or was a free and voluntary gift. Cf. *Wolfman* v. *Webster,* 77 N. H. 24. Within the bounds of reasonableness, the trustee's decision as to what, if anything, shall be paid upon Florence's debts will be final. *Hanford* v. *Clancy,* 87 N. H. 458.

IV. The discretionary power of the trustee extends to payment or non-payment of the obligations of the beneficiary that arose before his appointment. The intention of the testatrix that discretion should be vested in the trustee at the time of modification is clear enough. She did not intend that the trust should be executable solely by the trustee named in the will and that it should terminate at his death.

Clearly it was to terminate only at the death of Florence. Nothing contrary to this view is to be found. The petitioner has all of the powers that the original trustee would have had if he had continued to live and serve. To hold otherwise would defeat the intention of the testatrix to "protect" the fund during Florence's life. *Fowler* v. *Hancock*, 89 N. H. 301, 303.

V. The question whether the funds in the hands of the petitioner are subject to trustee process in the action brought by Johnson against Florence has already been answered negatively.

*Case discharged.*

All concurred.