(803 P.2d 1045)

No. 64,947

STATE OF KANSAS *ex rel.* SECRETARY OF SOCIAL AND REHABILI-TATION SERVICES, *Appellant,* v. CARRIE CONNER JACKSON, *Appellee.*

Opinion filed December 28, 1990.

*Robert R. Hiller, Jr.,* and *Reid Stacey,* of Kansas State Department of Social and Rehabilitation Services, for appellant.

*Mark D. Calcara,* of Watkins, Calcara, Rondeau & Friedeman, P.A., of Great Bend, for appellee.

Before DAVIS, P.J., GERNON, J., and RALPH M. KING, JR., District Judge, assigned.

GERNON, J.: This is an appeal from a ruling in favor of the defendant, Carrie Conner Jackson, in an action for reimbursement of public assistance benefits.

The State of Kansas *ex rel.* Secretary of Social and Rehabilitation Services (SRS) contends that the trial court erred by ruling that funds from a trust were not an "available" resource of Jackson for the purposes of determining eligibility for public assistance benefits.

FACTS

Carrie Conner Jackson received medical assistance, food stamps, and cash public assistance in a total amount of $35,565.11 beginning in May of 1983. In February of 1986, SRS terminated the assistance. The basis for the termination was that Jackson was a beneficiary of two trusts. SRS concluded that trust funds were "available" to Jackson and, therefore, she was not eligible for

benefits. SRS sued Jackson for the amount Jackson had received for assistance, contending it was an "overpayment."

The parties stipulated to the facts. Two trusts were created by Jackson's grandfather, W. D. Essmiller. Both were discretionary trusts with spendthrift provisions. Jackson received only nominal funds from one of the trusts during the time she was receiving assistance.

W. D. Essmiller expressed concern about the lifestyle and lack of employment of Jackson and her husband. Essmiller expressed his concern about Jackson's ability to handle financial matters. When he set up the trusts, he gave the trustees full control and discretion as to the use of the funds. He further provided that, upon Jackson's death, the funds would be distributed to her children upon all of them reaching the age of 21.

APPLICABLE LAW

Eligibility requirements for general assistance, medical assistance, and assistance to families with dependent children (AFDC) are governed by K.S.A. 1989 Supp. 39-709. Assistance from programs involving federal funds is governed by K.S.A. 1989 Supp. 39-709(a), which provides in part that assistance "may be granted to any needy person who: (1) Has insufficient income or resources to provide a reasonable subsistence compatible with decency and health." The provision also permits SRS to establish income and resource exemptions as permitted by federal legislation.

Eligibility for the AFDC program is governed by K.S.A. 1989 Supp. 39-709(b), which provides that assistance "may be granted" to any dependent child or relative meeting the requirements of K.S.A. 1989 Supp. 39-709(a).

Eligibility for general assistance programs not involving federal funds is governed by K.S.A. 1989 Supp. 39-709(d)(1), which provides in part:

"(A) To qualify for general assistance in any form a needy person must have insufficient income or resources to provide a reasonable subsistence compatible with decency and health and, except as provided for transitional assistance, be a member of a family in which a minor child or a pregnant woman resides or be unable to engage in employment."

Eligibility for medical assistance is governed by K.S.A. 1989 Supp. 39-709(e), which provides in part:

"[M]edical assistance in accordance with such plan shall be granted to any person . . . whose resources and income do not exceed the levels prescribed by the secretary. In determining the need of an individual, the secretary may provide for income and resource exemptions and protected income and resource levels."

K.S.A. 39-719b authorizes an action for reimbursement of public assistance benefits and provides in part:

"Any assistance paid shall be recoverable by the secretary as a debt due to the state. If during the life or on the death of any person receiving assistance, it is found that the recipient was possessed of income or property in excess of the amount reported or ascertained at the time of granting assistance, and if it be shown that such assistance was obtained by an ineligible recipient, the total amount of the assistance may be recovered by the secretary as a fourth class claim from the estate of the recipient or in an action brought against the recipient while living."

Pursuant to the authority granted by K.S.A. 39-708c, the Secretary of SRS has issued a number of regulations concerning eligibility for public assistance benefits. K.A.R. 30-4-34 *et seq.* contain the eligibility requirements for most public assistance programs. Eligibility requirements for medical assistance programs (other than Medicaid) are contained in K.A.R. 30-6-34 *et seq.*

K.A.R. 30-4-53 contains financial eligibility requirements for public assistance and provides in part:

"Each applicant or recipient shall be determined to be financially eligible if the client: (a) Owns property within the allowable limits;

"(b) has income that does not exceed 185% of the public assistance standards as set forth in K.A.R. 30-4-100; and

"(c) has a budgetary deficit after subtracting total applicable income from the public assistance standards."

While K.A.R. 30-4-53 has been restructured and the income eligibility standard has been adjusted, the basic eligibility requirements of the regulation have not changed since 1982. See K.A.R. 30-4-53 (1983); K.A.R. 30-4-53 (1982 Supp.).

K.A.R. 30-4-106 (1983) contains "rules for consideration of resources" of a public assistance applicant and provides in part:

"(a) Ownership for assistance purposes shall be determined by legal title. In the absence of a legal title, ownership shall be determined by possession.

"(b) Resources shall be real and of a nature that the value can be defined and measured. . . .

"(c) Resources shall be considered available both when actually available and when the applicant or recipient has the legal ability to make them available.

(d) The resource value of property shall be that of the applicant's or recipient's equity in the property."

K.A.R. 30-4-109 provides a definition of personal property for eligibility purposes. K.A.R. 30-4-109(a)(2) provides: " 'Cash assets' means money, investments, cash surrender or loan values of life insurance policies, trust funds, and similar items on which a determinate amount of money can be realized." This definition has not been changed since 1982. See K.A.R. 30-4-109(a)(2)(1982 Supp.).

The provisions of K.A.R. 30-6-106 (1983), concerning medical assistance, are nearly identical to the provisions of K.A.R. 30-4-106. The current version of 30-6-106 contains an additional provision concerning trusts created by the applicant or their spouse. See K.A.R. 30-6-106(c)(2)(1990 Supp.). Even if this provision is deemed applicable to benefits granted in 1986 and earlier, the provision does not address a trust created by a grandparent.

Essentially, the State argues the trust funds were an "available" resource within the meaning of K.A.R. 30-4-106(c) and K.A.R. 30-6-106(c)(1). As noted, the resolution of this issue will depend upon the nature of Jackson's interest in the trusts.

NATURE OF TRUSTS

The State has abandoned any claim to funds from the W. D. Essmiller Trust. This trust instrument clearly makes Jackson a contingent beneficiary if the funds are not exhausted for the benefit of Essmiller's daughter, Laverna Conner. Therefore, all agree that Jackson's interest in this trust does not constitute an "available" resource under K.A.R. 30-4-106(c) and K.A.R. 30-6-106(c)(1).

The Jackson Trust is, therefore, the focus of the State's attention. The stipulated facts characterize the instruments as "discretionary trusts with spendthrift provisions." The Jackson Trust provides in part:

"(A) During the lifetime of Carrie Conner Jackson, the Trustees, in their uncontrolled discretion, shall pay to Carrie Conner Jackson the net income of the Trust. In addition, the Trustees may pay to Carrie Conner Jackson, from the principal of the Trust from time to time, such amount or amounts

as the Trustees in their uncontrolled discretion, may determine is necessary for the purposes of her health, education, support and maintenance. . . .

"(B) On the death of my granddaughter, Carrie Conner Jackson, the trust property shall be distributed among her issue, *per stirpes*, and held in separate trusts until all of her children reach the age of twenty-one (21) with the Trustees having the sole discretion to distribute the income and invade the principal for purposes of their health, education, support or maintenance. . . .

"(C) The interest of each beneficiary and the income or principal of the trust created under this instrument shall be free from the control or interference of any creditor of a beneficiary or of any spouse of a married beneficiary and shall not be subject to attachment or susceptible of anticipation or alienation."

K.S.A. 33-101 contains a general rule regarding the claims of creditors against a trust beneficiary and provides:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of motive, as to all past, present or future creditors; but otherwise shall be valid and effective."

We agree with the trial court's conclusion that the Jackson Trust was a discretionary trust and, therefore, those funds were not "available" for the purposes of public assistance eligibility. Our conclusion is supported inferentially by present Kansas case law, although the precise question in the present case has not been reported.

In *Watts v. McKay*, 160 Kan. 377, 162 P.2d 82 (1945), the Kansas Supreme Court recognized the validity of discretionary trusts and the powers of the trustee in such cases. The plaintiff in *Watts* sought an order compelling the trustee to pay a judgment for alimony. The court determined that a discretionary trust existed and stated:

"The beneficiary has no right, as a matter of law, to require the trustee to turn over to him the principal of the estate or any part of it. . . .

 . . . .

". . . [The beneficiary] does not have such an interest in the corpus of the trust estate in the hands of the trustee as can be reached to satisfy the judgment for alimony and attorney's fees, and . . . the trustee did not abuse his discretion in refusing to pay such judgment." 160 Kan. at 385.

In *Watts*, the court cited with approval the provisions of the Restatement of Trusts § 155 (1935), concerning discretionary

trusts. The present version of this treatise contains the same language:

"Except as stated in § 156, if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal." Restatement (Second) of Trusts § 155(1)(1957).

Comment b of this subsection states:

"A trust containing such a provision as is stated in this Section is a 'discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit."

Our reading of the trust instrument leads us to conclude that the discretionary trust language in *Watts* was not as strong as the discretionary language of the present case. In *Watts*, the trust instrument provided in part: "I hereby direct such trustees to pay said Corwin Grant Watts, at such times as to them may seem necessary, such sums of money as shall in their judgment be necessary for the proper maintenance, support and education of said Corwin Grant Watts." 160 Kan. at 378.

In *Jennings v. Murdock*, 220 Kan. 182, 201, 553 P.2d 846 (1976), the Kansas Supreme Court noted:

" ' The accepted rule is that where the instrument creating a trust gives the trustee discretion as to its execution, a court may not control its exercise merely upon a difference of opinion as to matters of policy, and is authorized to interfere only where he acts in bad faith or his conduct is so arbitrary and unreasonable as to amount to practically the same thing.' [Citation omitted.] . . . '[A] court will not "at the instance of interested parties, interfere with the performance of his duties by the trustee and the exercise of the discretionary powers conferred upon him, unless there is shown bad faith on his part, or a gross and arbitrary abuse of discretion." ' " 220 Kan. at 201 (quoting *Elward v. Elward*, 117 Kan. 458, 459, 232 Pac. 240 [1925]).

We conclude the decision of the trial court was correct, and it is affirmed.