(853 P.2d 74)
No. 68,401

RON R. WILCOX and NANCY JO WILCOX, *Plaintiffs/Appellants,* v. ISABELL GENTRY, *Defendant,* and JAMES F. JARVIS, Trustee of the Frank Gentry Trust, *Garnishee/Appellee.*

Opinion filed May 28, 1993.

*Don W. Noah,* of Noah and Harrison, P.A., of Beloit, for plaintiffs/appellants.

*Rodney G. Nitz,* of Salina, for garnishee/appellee.

Before BRAZIL, P.J., LEWIS, J., and DANIEL L. BREWSTER, District Judge, assigned.

BREWSTER, J.: Ron and Nancy Wilcox appeal from the trial court's decision holding that any payments made by the trustee of the Frank Gentry Trust, a discretionary trust, which are made for the benefit of Isabell Gentry and not paid directly to Isabell, are not subject to garnishment. We affirm in part and reverse in part.

At issue is whether the trustee of a discretionary trust that does not contain a spendthrift clause is required, under a garnishment order, to pay a judgment creditor all sums which may be paid for the benefit of the beneficiary.

The trust provision in dispute provides:

"(e) One share shall remain in trust until the death of Isabell Gentry. The trustee, *in his sole discretion, may make distributions of income and principal to her or on her behalf* as the trustee deems advisable *after giving due consideration to all sources of funds available to her.* Upon the death of Isabell Gentry, the trust shall terminate and the balance of the trust and accumulated income shall be distributed to the then surviving beneficiaries in proportion to the beneficial interests they would have been entitled to, under D. 5.(a), (b), (c) and (d) above, had Grantor died on the actual date of Isabell Gentry's death. In the event Isabell Gentry should predecease the Grantor, this share shall be equally divided between Mary Margaret Gentry and Eric Gentry, or pass fully to the survivor." (Emphasis added.)

On appeal, this court may determine the type of trust created. *State ex rel. Secretary of SRS v. Jackson,* 249 Kan. 635, 641, 822 P.2d 1033 (1991). Because it is within the trustee's sole discretion whether to make a distribution of the income and principal in a given year and to determine whether to distribute it to Isabell or on her behalf, we find the trial court correctly determined the trust provision to be discretionary in nature.

Neither party disputes the Wilcoxes' ability to garnish trust distributions made directly to Isabell. However, the Wilcoxes argue the trial court's order was erroneous because, under it, the trustee can avoid making garnishment payments by applying the

distribution for Isabell's benefit instead of making direct payments to her. The Wilcoxes assert that the trial court's decision, based on IIA Scott on Trusts § 155.1, p. 160 (4th ed. 1987) is based on old English cases and a New Hampshire case, *Duncan v. Elkins*, 94 N.H. 13, 45 A.2d 297 (1946), which are arbitrary and without a sound basis in public policy. They urge this court to adopt the reasoning of *Matter of Sand v. Beach*, 270 N.Y. 281, 200 N.E. 821 (1936), to allow them to reach any payments made on behalf of Isabell. Lastly, they argue that, because Kansas has not followed the English rule that spendthrift trusts are invalid, it should not follow this English rule.

While conceding that the judgment creditor may garnish amounts paid directly to Isabell, the trustee argues Kansas should follow the rule applied in the courts of England that a creditor cannot reach money paid by the trustee for the benefit of the beneficiary or money paid directly to the beneficiary that does not exceed the amount needed for support.

The issue presented regarding the legal effect of the written trust provision is a question of law of which we have unlimited review. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). No case on point has been found. Resolution of this issue requires us to review the general principles and policies regarding discretionary trusts in this and other jurisdictions.

Kansas has recognized the validity of discretionary trusts, approving the language set out in the Restatement of Trusts § 155 (1935) concerning such trusts and, more recently, the language set out in the present version of the Restatement:

" 'Except as stated in § 156, if by the terms of a trust it is provided that the trustee *shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal.* Restatement (Second) of Trusts § 155(1) (1957).'

Comment b of this subsection states:

'A trust containing such a provision as is stated in this Section is a "discretionary trust" and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust *it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest.* The rule stated in this

Section is not dependent upon a prohibition of alienation by the settlor; *but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit.'* " (Emphasis added.) *Jackson,* 249 Kan. at 640.

In a discretionary trust, as a matter of law, the beneficiary cannot compel the trustee to pay trust income or principal to the beneficiary; neither can a creditor of the beneficiary compel the trustee to do so. *Watts v. McKay,* 160 Kan. 377, 385, 162 P.2d 82 (1945), approved in *Jackson,* 249 Kan. at 639-40.

"In the case of a discretionary trust, that is, where the amount of the trust income to be applied to the support or education of the beneficiary, or to be paid to him for such purpose, rests in the discretion of the trustee, the cestui que trust has no vested or enforceable interest in the income, and there is, consequently, no surplus available to his creditors before the actual allocation or appropriation of income by the trustee for distribution to the beneficiary. But this rule has been held inapplicable in the case of a trust established for the benefit of the settlor." Annot., 36 A.L.R.2d 1218.

See also IIA Scott on Trusts § 155, p. 154 (4th ed. 1987) ("The trust is purely discretionary where the trustee may withhold the income and the principal altogether from the beneficiary, but not where he has discretion only as to the time or method of making payments to the beneficiary or applying the trust fund for his benefit." Relying on the English case of *In re Smith,* [1928] 1 Ch. 915, 918.).

In *Jackson,* the Supreme Court found the trust provision there regarding the trust income was not discretionary but evidenced the grantor's intent that the income be used to support the beneficiary and prevent her from becoming destitute and dependent upon public assistance for support. 249 Kan. at 642-43. The court's interpretation was based on the trust provision's wording that the trustee "shall pay the . . . net income" of the trust. 249 Kan. at 641. Based on that interpretation and the public policy that public assistance funds be restricted for the destitute and truly needy who have no resources, the court found the trust income was available to reimburse SRS for the care and support it had provided the beneficiary. 249 Kan. at 644-45.

The decision in *Jackson* is not inconsistent with the English case of *Smith. Smith* held that while a creditor of the beneficiary of a discretionary trust could recover any money the trustees paid

directly to the beneficiary, it also held that the creditor could not demand any money that "the trustees have not paid to [the beneficiary] or invested in purchasing goods or other things for [the beneficiary], but which they apply for the benefit of [the beneficiary], in such a way that no money or goods ever gets into the hands of [the beneficiary]." 1 Ch. at 919-20. Although the action in *Jackson* was brought under K.S.A. 39-719b, wherein the State could seek reimbursement for services provided by SRS, the court affirmed that, if the trust had been discretionary, it would not be an available resource. 249 Kan. at 639.

The fact that *Watts* and *Jackson* follow the English rule regarding discretionary trusts weighs against the Wilcoxes' argument that Kansas should not follow that English rule in this case because it has not followed the English rule regarding spendthrift trusts.

The underlying rule of the English cases, as affirmed in *Watts* and *Jackson*, is that neither the beneficiary nor the beneficiary's creditors can compel payment from the trustees because the beneficiary has no vested right in the distributions until such time as the trustees in their discretion make a disbursement. Because the trustees can withhold the payments and allow them to accumulate or direct them elsewhere, as when the trustees can elect between several potential beneficiaries, the beneficiary does not own the disbursement until it is awarded to him by the trustees. See *Jackson*, 249 Kan. at 639-40; *Watts*, 160 Kan. at 385.

The English cases do not appear to go against sound public policy. See *Edmonds v. Edmonds*, [1965] 1 All E.R. 379, 381 (if the trustee of the discretionary pension trust makes payments for the benefit of the husband, *i.e.*, paying his hotel bill or his accounts with shopkeepers, the payments would not fall within the description of payment to him and are not available to the creditor ex-wife); *In re Ashby*, [1892] 1 Q.B. 872, 877 (only trust payments to the beneficiary or paid for the support of the beneficiary and his family which are in excess of the amount needed for their support is available to the beneficiary's creditors); *In re Coleman*, 39 Ch. D. 443, 451 (1887)(where it is in the trustee's discretion to apply income for the maintenance of the beneficiaries in the manner they see fit, trust money paid for services for the

benefit of the beneficiary children is not property that can pass by assignment, but money or goods paid directly to the beneficiary would pass by assignment).

The English rule is consistent with case law in other jurisdictions which holds that "a court will not compel a trustee to exercise a discretionary power absent an abuse of discretion by the trustee." *First National Bank of Catawba County v. Edens*, 55 N.C. App. 697, 704, 286 S.E.2d 818 (1982). See *First Nat'l Bk. v. Dep't of Health*, 284 Md. 720, 726, 399 A.2d 891 (1979).

An early United States Supreme Court case reflects that Court's opinion that courts should be cautious in interfering with a grantor's disposition of property through trust provisions. In that case, the testatrix set up testamentary trusts for her children which contained spendthrift provisions. *Nichols, Assignee, v. Eaton et al.*, 91 U.S. 716, 718, 23 L. Ed. 254 (1875). In discussing the doctrine of the English Chancery Court, which limited the power of testamentary disposition of property by its owner and invalidated clauses preventing alienation to protect creditor's rights, *i.e.*, spendthrift clauses, the United States Supreme Court held it would not be so limited, stating:

"But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court." 91 U.S. at 725.

"Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives*, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived." *Nichols*, 91 U.S. at 727.

After discussing state cases supporting the Court's view, it found that, under the spendthrift provision of the testatrix's will,

"the insolvency of her son terminated all his legal vested right in her estate, and left nothing in him which could go to his creditors, or to his assignees

in bankruptcy, or to his prior assignee; and that what may have come to him after his bankruptcy through the voluntary action of the trustees, *under the terms of the discretion reposed in them*, is his lawfully, and cannot now be subjected to the control of his assignee." (Emphasis added.) 91 U.S. at 730.

That holding reflects the English rule governing discretionary trusts and the rights of creditors discussed above. Additionally, it reflects a policy to follow the intent of the grantor to keep the trust funds out of the reach of the beneficiary's creditors. In reviewing the limited case law available, it is apparent that that policy continues to be followed, with limited exceptions such as where the discretionary trust is to provide for the support and maintenance of the beneficiary and a third party needs to be reimbursed for that care or where a state statute provides for recovery such as in *Matter of Sand v. Beach*, 270 N.Y. 281, upon which the Wilcoxes rely.

*Sand* involved the ability of a judgment debtor to recover a percentage of the trust income applied for the use of the beneficiary under New York's Civil Practice Act, § 684. 270 N.Y. at 282-83, 285. The specific purpose of that act "was to permit judgment creditors to reach a portion of the income derived from a trust fund enjoyed by the judgment debtor and to that extent destroy the immunity of the beneficiary of a spendthrift trust from claims of his creditors." 270 N.Y. at 286.

Kansas has no statute comparable to the New York statute in *Sand*. A review of our garnishment statutes reveals one statute which gives some direction to the issue and reflects an intent different than that in *Sand*. K.S.A. 1992 Supp. 60-717(c) regarding the effect of a garnishment order provides:

"An order of garnishment issued to attach any property, funds, credits or other indebtedness belonging to or owing the defendant, other than earnings, shall attach (1) all such property of the defendant which is in the possession or under the control of the garnishee, and all such credits and indebtedness due from the garnishee to the defendant at the time of service of the order and (2) all such property coming into the possession or control of the garnishee and belonging to the defendant, and all such credits and indebtedness becoming due to the defendant between the time of the serving of the order of garnishment and the time of the signing of the answer of the garnishee, *but if the garnishee is an executor or administrator of an estate and the defendant is or may become a legatee or distributee thereof, the order of garnishment shall attach and create a first and prior lien upon*

*any property or funds of such estate to which the defendant is entitled upon distribution of the estate and the garnishee shall be prohibited from paying to the defendant any of such property or funds until so ordered by the court from which the order of garnishment was issued."* (Emphasis added.)

The functions of an administrator of a trust estate and distributions made to a beneficiary are of similar purpose to those of a testamentary estate. Additionally, the beneficiary of a trust is most certainly similar to the distributee of an estate within the meaning of the statute. We think it consistent that for garnishment purposes a trust estate should be treated similarly to a decedent's estate under K.S.A. 1992 Supp. 60-717(c).

Under the plain meaning of the words used in the statute, a first and prior lien would attach only to those funds "to which the defendant is entitled," no more. Likewise, the statute only directs that a lien attaches to funds to which the distributee has a right and which *are to be paid to the distributee*, not to others. So too under the case law and policy discussed herein regarding trust estates, only those funds paid directly to a beneficiary should be subject to a garnishment lien.

We find no error in the trial court's order that payments made to third parties for the benefit of Isabell Gentry cannot be reached.

Although not raised as an issue, the parties have brought to our attention the trial court's order of continuing garnishment in this case. Based on our review of Kansas' garnishment statutes, we find the trial court had no jurisdiction to enter such an order. We set it aside under this court's authority to address an issue *sua sponte*.

Under K.S.A. 60-721(b), the trial court may issue a continuing garnishment order in cases of support of a person, but

"[n]o order may be made pursuant to this subsection (b) unless the court finds that the defendant is in arrearage of a court order for support in an amount equal to or greater than one year of support as ordered and the defendant receives compensation from his or her employer on a regular basis in substantially equal periodic payments."

The legislature clearly intended and did limit orders of continuous garnishment to situations involving an arrearage in the support of a person to the exclusion of all other situations. Compare K.S.A. 1992 Supp. 60-717(c) setting forth a 30-day period of

garnishment. Under K.S.A. 60-721, it was not within the trial court's jurisdiction to order continuing garnishment for the judgment creditors in this case.

The trial court's holding that any amounts paid not directly to but for the benefit of the beneficiary are immune from garnishment is affirmed. The trial court's order of continuing garnishment is set aside as being beyond the jurisdiction of the trial court under K.S.A. 60-721.