No. 68,401·

RON R. WILCOX and NANCY JO WILCOX, *Appellants*, v. ISABELL
 GENTRY, JAMES F. JARVIS, Trustee, Frank Gentry Trust,
 *Appellees*.

(867 P.2d 281)

Opinion filed January 21, 1994.

*Don W. Noah*, of Noah & Harrison, P.A., of Beloit, argued the cause,
and *Jerry L. Harrison* and *Mark J. Noah*, of the same firm, were with him
on the briefs for appellants.

*Rodney G. Nitz*, of Salina, argued the cause and was on the briefs for
appellee James F. Jarvis, Trustee, Frank Gentry Trust.

The opinion of the court was delivered by

MCFARLAND, J.: Ron and Nancy Wilcox appeal from the district
court's judgment holding that any payments made by the trustee
of the Frank Gentry Trust (Trust) which are made for the benefit
of Isabell Gentry and not paid directly to Isabell are not subject
to garnishment. The Court of Appeals affirmed the judgment
appealed from, but reversed, *sua sponte*, a continuing garnish-
ment order entered by the district court relative to payments
made by the trustee directly to Isabell Gentry. The matter is
before us on petition for review.

In 1985, Frank Gentry created a revocable Trust. During his
lifetime, Frank was the beneficiary of the Trust. Upon Frank's
death certain trust property was to be distributed to named in-
dividuals. The residue of the Trust's assets was to be divided into

five equal shares. Four of these shares were to be distributed to the four individuals designated as their recipients. This action concerns the fifth share. The applicable Trust provision in Article III, Section D.5, is as follows:

"(e) One share shall remain in trust until the death of Isabell Gentry. The trustee, in his sole discretion, may make such distributions of income and principal to her or on her behalf as the trustee deems advisable after giving due consideration to all sources of funds available to her. Upon the death of Isabell Gentry, the trust shall terminate and the balance of the trust and accumulated income shall be distributed to the then surviving beneficiaries in proportion to the beneficial interests they would have been entitled to, under D. 5.(a), (b), (c) and (d) above, had Grantor died on the actual date of Isabell Gentry's death. In the event Isabell Gentry should predecease the Grantor, this share shall be equally divided between Mary Margaret Gentry and Eric Gentry, or pass fully to the survivor."

The district court and the Court of Appeals characterized the Trust provisions applicable to Isabell Gentry in (e) as being discretionary in nature. This determination is unchallenged herein and we agree we are dealing with a discretionary trust. The Trust contains no spendthrift provision.

Ron and Nancy Wilcox obtained a judgment against Isabell Gentry for fraud in the sale of a residential property. Their judgment was for $40,000 actual damages and $11,667.35 punitive damages. They garnished the Trust to seek satisfaction of their judgment. Frank Gentry, grantor and sole beneficiary during his lifetime, had died previously, thereby activating section 5(e) relative to Isabell.

The district court held that any trustee payments directly to Isabell were subject to garnishment but that trustee payments for Isabell's benefit were not. The propriety of the district court's determination relative to payments made for Isabell's benefit is the only aspect of the judgment from which an appeal was taken.

The Court of Appeals' affirmance of the district court was based, in part, upon our case of *State ex rel. Secretary of SRS v. Jackson,* 249 Kan. 635, 822 P.2d 1033 (1991). Reliance on *Jackson* is misplaced. *Jackson* involved an action by SRS, pursuant to K.S.A. 39-719b, to compel the Jackson Trust beneficiary to reimburse SRS for public assistance benefits she had received. The Trust was not a party to the action, and the trustee was not being asked to pay anything to SRS. The issue was whether or not the

trust had been an "available resource" to Jackson at the time she was receiving public assistance funds for purposes of determining her eligibility for such SRS benefits. Thus, the spendthrift provisions of the Jackson Trust were irrelevant. The case involved only Jackson's interest in the trust. We held that the trust was discretionary as to payments of principal but not discretionary as to income. Thus, as Jackson had the right to receive the trust income, such income was an available resource to Jackson in determining her eligibility for public assistance.

In *Jackson* we cited Restatement (Second) of Trusts § 155(1) (1957) and comment (b), which provide:

"(1) Except as stated in § 156, if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal.

"Comment b:

"A trust containing such a provision as is stated in this Section is a 'discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit."

Section 155(1) was pertinent to *Jackson* as we were concerned with the interest of the beneficiary to the trust and her concomitant ability to compel payment to her.

In the case before us, the issue is not whether the trustee can be compelled to pay income or principal. The issue before us is, if the trustee exercises its discretion and makes a payment on behalf of the beneficiary, whether such payment is subject to the creditors' garnishment.

This makes Restatement (Second) of Trusts § 155(2), rather than (1), the applicable statement, as it provides:

"(2) Unless a valid restraint on alienation has been imposed in accordance with the rules stated in §§ 152 and 153, if the trustee pays to or applies for the beneficiary any part of the income or principal with knowledge of

the transfer or after he has been served with process in a proceeding by a creditor to reach it, he is liable to such transferee or creditor."

As previously stated, there is no valid restraint on alienation (spendthrift provision) involved herein. This section makes no distinction between payments directly to the beneficiary or on the beneficiary's behalf.

Pertinent comments to subsection (2) are found therein as follows:

"h. *Effect of payment by trustee to beneficiary after assignment*. Although in the case of a discretionary trust a transferee or creditor of the beneficiary cannot compel the trustee to pay over any part of the trust property to him, yet if the trustee does pay over any part of the trust property to the beneficiary with knowledge that he has transferred his interest or after the trustee has been served with process in a proceeding by a creditor of the beneficiary to reach his interest, the trustee is personally liable to the transferee or creditor for the amount so paid, except so far as a valid provision for forfeiture for alienation or restraint on alienation has been imposed as stated in §§ 150, 152 and 153.

"Illustrations:

"3. The facts are as stated in Illustration 1. [Beneficiary B transfers his interest to E.] If B with knowledge of the transfer to E pays to C any part of the trust property, he is liable to E for the amount so paid.

"4. The facts are as stated in Illustration 2. If B after being served with process in the creditor's suit pays to C any part of the trust property, he is liable to the creditor for the amount so paid.

"i. *Effect of applying property by trustee for beneficiaries after assignment*. If the trustee applies for the benefit of the beneficiary income or principal, he is liable to an assignee of the beneficiary's interest or to a creditor of the beneficiary, if he makes such application after he has knowledge of the assignment or after he has been served with process in a proceeding brought by a creditor of the beneficiary to reach the beneficiary's interest."

In IIA Scott on Trusts § 155.1, p. 160-61 (4th Ed. 1987), the following pertinent discussion appears:

"Although the trustee need not pay any part of the trust fund to the beneficiary or to his creditors, but may withhold it entirely, but if he does determine to pay part of it to him, he should pay it to the creditors who now stand in his shoes. The English courts, however, have here made a distinction. They have held that the trustee can properly *apply* the trust fund for the use of the beneficiary even though he is bankrupt or his creditors have brought a proceeding to reach his interest. In *In re Smith* [, (1928), 1 Ch. 915 919], Romer, J., said:

'Where there is a trust to apply the whole or such part of a fund as trustees think fit to or for the benefit of A., and A. has assigned his interest under the trust, or become bankrupt, although his assignee or his trustee in bankruptcy stand in no better position than he does and cannot demand that the fund shall be handed to them, yet they are in a position to say to A.: "Any money which the trustees do in the exercise of their discretion pay to you, passes by the assignment or under the bankruptcy." But they cannot say that in respect of any money which the trustees have not paid to A. or invested in purchasing goods or other things for A., but which they apply for the benefit of A. in such a way that no money or goods ever gets into the hands of A.'

The distinction thus drawn between payment to the beneficiary and applying trust funds for his benefit seems to be arbitrary and without any sound basis in public policy. The result is that the beneficiary is enabled to enjoy the benefit of the trust in spite of his insolvency, as long as the trustee is willing to apply the trust estate for his benefit."

In Bogert, Trusts and Trustees § 228, pp. 524-32 (Rev. 2d Ed. 1992), distinctions between discretionary and spendthrift trusts are discussed, and the following is stated relative to a creditor's ability to reach trust funds:

"If the trust is a true 'discretionary' trust, the nature of the interest of the beneficiary, rather than any expressed restraint on his power to alienate or the rights of his creditors, determines questions of voluntary or involuntary alienation. The beneficiary cannot secure the aid of a court in compelling the trustee to pay or apply trust income or principal to him since the terms of the trust permit the trustee to withhold payments at his will. Until the trustee elects to make a payment the beneficiary has a mere expectancy. Nor can a creditor compel the trustee to exercise his discretion to make payments. If the beneficiary attempts to transfer his interest, or his creditors seek to take it, before the trustee has made an election to pay or apply, the transferee or creditor has no remedies against the trustee because he stands in the shoes of the beneficiary.

. . . .

"If, however, the trustee exercises his discretion by making a decision to pay to or apply for the beneficiary, then the beneficiary can force the trustee to confer such a benefit on him, and he can transfer his right and his creditors can take advantage of it, if the trust does not have a spendthrift clause. If the trustee receives notice of an attempted voluntary transfer, or is served with process by a creditor of the beneficiary, before the making of his decision to allocate trust property to the beneficiary, he will be liable to the assignee or creditor if he thereafter uses his discretion and elects to pay to the beneficiary. In such a case his duty is to pay to the assignee or creditor if he decides to pay or apply, unless the discretionary trust instrument contains a spendthrift clause, or a statute gives rights to the creditor

as in the case where the surplus of income over that needed for support is made liable to creditors."

The above-cited treatises are persuasive. We see no valid reason for treating payments to a beneficiary differently from payments made on behalf of the beneficiary as far as creditors are concerned. If the creditor has the right to reach payments made to the beneficiary excluding payments made on behalf of the beneficiary serves only to encourage circumvention of that right. We adopt Restatement (Second) of Trusts § 155(2) and find it determinative of this issue. The district court and the Court of Appeals erred in holding that only funds paid directly to a discretionary trust beneficiary are subject to garnishment by a creditor.

In their petition for review, Ron and Nancy Wilcox object to the Court of Appeals' reversal, *sua sponte*, of the district court's continuing order of garnishment as to funds paid directly to the beneficiary.

The Wilcoxes did not appeal from this part of the judgment as it was in their favor. No cross-appeal was filed.

K.S.A. 1992 Supp. 60-2103(h) provides:

"When notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which such appellee complains, the appellee shall, within 20 days after the notice of appeal has been served upon such appellee and filed with the clerk of the trial court, give notice of such appellee's cross-appeal."

As to its basis for raising an issue *sua sponte*, the Court of Appeals stated:

"Although not raised as an issue, the parties have brought to our attention the trial court's order of continuing garnishment in this case. Based on our review of Kansas' garnishment statutes, we find the trial court had no jurisdiction to enter such an order. We set it aside under this court's authority to address an issue sua sponte." 18 Kan. App. 2d at 363.

The district court had both personal and subject matter jurisdiction herein.

The order of continuing garnishment entered herein as to funds paid directly to the beneficiary was in no way an inherent part of the sole issue on which the appeal was taken or necessary to the determination of that issue. Even if such had been the sit-

uation, the parties should have been afforded the opportunity to brief the *sua sponte* issue.

If judicial review was to be had on this aspect of the judgment, it should have been the subject of a cross-appeal by a party aggrieved thereby. This did not occur. We conclude the Court of Appeals lacked jurisdiction to raise and determine this matter *sua sponte*. See *Douglas v. Lombardino*, 236 Kan. 471, 490, 693 P.2d 1138 (1985).

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded for further proceedings.