No. 68,770

DARRELL EDWARD MYERS, JR., *Appellee,* v. KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellant.*

(866 P.2d 1052)

Opinion filed January 21, 1994.

*Barbara J. Steele,* of Kansas Department of Social and Rehabilitation Services, of Olathe, argued the cause and was on the briefs for appellant.

*Steven M. Goe,* of Holbrook, Heaven & Fay, P.A., of Merriam, argued the cause, and *Lewis A. Heaven, Jr.,* of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: The Kansas Department of Social and Rehabilitation Services (SRS) appeals from a judgment of the district court holding Darrell E. Myers, Jr., was the beneficiary of a discretionary trust and that the assets of the trust could not be considered as resources available to Myers in determining whether he was eligible for medical assistance. The Court of Appeals affirmed the judgment of the district court in an unpublished decision decided May 28, 1993. We granted the pe-

tition for review of SRS and now affirm the Court of Appeals and the district court.

The facts are not in dispute. In 1981, Caroline H. Myers executed her will, which provided for a trust for the care, support, and maintenance of her son, Darrell E. Myers, Jr. She bequeathed the sum of $110,000 to the trust. Upon her son's death, the principal and any undistributed income were to be distributed to Caroline's daughter and granddaughter, or the survivor thereof. Caroline H. Myers died in 1989. The trust was funded on November 20, 1989.

Darrell E. Myers, Jr., had been receiving public medical assistance from the State prior to the death of Mrs. Myers and the funding of the trust in 1989. Myers had apparently suffered from severe mental and physical disabilities for several years although the record does not indicate when he began receiving public assistance. In July of 1990, SRS terminated Myers' medical assistance when he failed to return an annual eligibility review form. Myers reapplied for assistance in November of 1990, but SRS denied the application, claiming Myers had resources which exceeded the eligibility level established by SRS regulations. The denial notice stated that assets held in trust for Myers were considered available to meet his medical needs.

After several reapplications and denials, Myers appealed the SRS decision of October 25, 1991, denying him medical assistance. The decision of SRS was affirmed by the administrative hearing officer on January 6, 1992, and his decision was affirmed by the State Appeals Committee on March 24, 1992.

In April of 1992, Myers filed a petition for judicial review. The district court, after reviewing the record and hearing arguments of counsel, issued its judgment finding the trust established in Caroline H. Myers' will to be a discretionary trust. Because neither the principal nor income were available to Myers, SRS could not consider the trust assets in determining Myers' eligibility for public medical assistance. SRS timely appealed the district court's decision, which was affirmed by the Court of Appeals.

The issue before us on review is whether the district court and Court of Appeals erred in determining that the Myers trust is a discretionary trust in which the assets are considered unavailable to Myers for the purpose of determining his eligibility

for public medical assistance. The question on appeal is the meaning and intent of the trust language set forth in Caroline H. Myers' will. Our decision will control whether SRS may consider the trust principal and income "available" for purposes of determining Myers' eligibility for public medical assistance.

The will of Caroline H. Myers provides in pertinent part:

"In the event my husband does not survive me then all the rest, residue remainder of my property, of which I shall die seized or possessed, shall be divided and set apart by my Executors into the following shares:

"1) The sum of one hundred and ten thousand ($110,000.00) dollars in trust to my trustee hereinafter named on the terms and conditions hereinafter stated *for the lifetime use and benefit of my son, Darrell E. Meyers [sic], Jr.*

. . . .

"A) In the event my son predeceases me I direct my Executor to divide his bequest equally and distribute it to my daughter and granddaughter or the survivors of them. In the event my granddaughter predeceases me, I direct my Executor to distribute her bequest to my daughter. In the event my daughter predeceases me, I direct my Executor to distribute her share to my granddaughter.

"B) *During my son's lifetime, my trustee shall hold, manage, invest and reinvest, collect the income there from [sic;] any [sic] pay over so much or all the net income and principal to my son as my trustee deems advisable for his care, support, maintenance, emergencies and welfare.* At my son's death I direct this trust for his benefit be terminated and the principal and any undistributed net income be distributed in accordance with paragraph A above.

"FIRST: I hereby name and appoint the Overland Park State Bank and Trust Company of Overland Park, Kansas as my trustee.

"SECOND: The principal of the trust hereinabove created and the interest resulting herefore *[sic]* while in the hands of the Trustee shall not be subject to any conveyance, transfer or assignment, or be pledged as security for any debt by the beneficiary, and the same shall not be subject to any claim by and *[sic]* creditor of the beneficiary through legal process or otherwise." (Emphasis added.)

K.S.A. 1992 Supp. 39-708c (b) grants the Secretary of SRS the power and duty to determine general policies and to adopt rules and regulations relating to the forms of social welfare administered by SRS. K.S.A. 1992 Supp. 39-709(e) provides that medical assistance shall be granted to residents whose income and resources do not exceed the levels prescribed by the Secretary. K.A.R. 30-6-106 sets forth the general rules for consideration of resources and reads in relevant part:

"(c)(1) Resources shall be considered available both when actually available and when the applicant or recipient has the legal ability to make them available. A resource shall be considered unavailable when there is a legal impediment that precludes the disposal of the resource. The applicant or recipient shall pursue reasonable steps to overcome the legal impediment unless it is determined that the cost of pursuing legal action would be more than the applicant or recipient would gain, or the likelihood of succeeding in the legal action would be unfavorable to the applicant or recipient."

Pursuant to K.A.R. 30-6-107, an individual having non-exempt resources in excess of $2,000 is not eligible for public medical assistance.

The sole issue before this court is the interpretation, as a matter of law, of the meaning and intent of the language used by Caroline H. Myers in the trust provisions of her will. Both parties confine their arguments primarily to the language which reads:

"During my son's lifetime, my trustee shall hold, manage, invest and reinvest, collect the income there from [sic] any [sic] pay over so much or all the net income and principal to my son as my trustee deems advisable for his care, support, maintenance, emergencies and welfare."

In construing the Caroline H. Myers trust language, our determination is directed to the specific language used by the testatrix in the document now before the court. While we are concerned with the construction of the specific language in this particular will, there are certain fundamental rules and principles to be considered and applied. Those rules were summarized in *In re Estate of Ellertson,* 157 Kan. 492, 496-97, 142 P.2d 724 (1943), as follows:

"There is no occasion for employing any rules of judicial construction where the intention is expressed clearly and unequivocally in the will [citation omitted]. The will is to be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the purposes of the testator as gathered from the entire will, and to effectuate rather than defeat the intention of the testator. [Citations omitted.] Controlling significance is not to be given to one of the terms of devise or bequest and other terms ignored. [Citation omitted.] The court must put itself as nearly as possible in the situation of the testator at the time he made the will and from a consideration thereof and the language used in every part of the will, determine the purposes and intentions of the testator [citation omitted]. All of the above rules are only phases of the fundamental rule that the intention of the testator is to be gathered from the will as a whole and that intention must prevail if it is consistent with

the rules of law [citation omitted]. . . . It is also to be borne in mind that a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing."

In *In re Estate of Hannah*, 215 Kan. 892, 897, 529 P.2d 154 (1974), this court stated:

"The paramount rule of construction in the interpretation of provisions in a will, to which all other rules are subordinate, is that the intention of the testatrix as garnered from all parts of the will is to be given effect, and that doubtful or seemingly inaccurate expressions in the will shall not override the obvious intention of the testatrix. [Citations omitted.] In construing a will the court should place itself as nearly as possible in the situation of the testatrix when she made the will, and from such a consideration and from the language used in every part of the will the court should determine as best it can the purposes and intentions of the testator as gleaned from the language used."

SRS contends that the Myers trust is a support trust which requires the trustee to inquire into the basic support needs of the beneficiary and provide for those needs. As such, SRS argues the trust is an available resource within the meaning of K.A.R. 30-6-106(c)(1).

Myers, on the other hand, argues that the language of the trust is unambiguous in its creation of a discretionary trust. Thus, the trust language gives the trustee full discretion to decide whether payments from the trust income or principal are advisable. Because the trustee has complete authority to withhold all trust assets, the trust is not an available resource for Myers. Additionally, the trustee of the Myers trust, although not a party to this action, maintains that pursuant to the terms of the trust, the trustee has a responsibility to the remaindermen as well as to Myers.

The Court of Appeals, in affirming the district court's ruling that the Myers trust was discretionary and not an available resource of the beneficiary, relied primarily on this Court's recent decision in *State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 822 P.2d 1033 (1991) *(Jackson II)*.

Both parties cite *Jackson II* as authority for their respective positions. In *Jackson II*, this court was similarly called upon to decide whether trust funds were an available resource for purposes of determining eligibility for public medical assistance. Car-

rie Jackson was the beneficiary of a trust fund created by her grandfather. During the period she was receiving nominal support from the trust, Jackson was also receiving public assistance benefits. The State contended that the trust fund providing support for Jackson was an available resource to her and was seeking reimbursement from Jackson, pursuant to K.S.A. 39-719b, for public assistance benefits paid to her in an amount in excess of $35,000.

In *State ex rel. Secretary of SRS v. Jackson,* 15 Kan. App. 2d 126, 803 P.2d 1045 (1990) *(Jackson I),* the Court of Appeals determined that the trust was purely discretionary in nature, and thus the trust assets were not an available resource to Jackson. However, in *Jackson II,* this court modified the Court of Appeals' ruling, concluding that the language in the trust instrument treated the trust income differently from the trust principal. The Jackson trust read in relevant part:

"(A) During the lifetime of Carrie Conner Jackson, the Trustees, in their uncontrolled discretion, shall pay to Carrie Conner Jackson the net income of the Trust. In addition, the Trustees may pay to Carrie Conner Jackson, from the principal of the Trust from time to time, such amount or amounts as the Trustees in their uncontrolled discretion, may determine is necessary for the purposes of her health, education, support and maintenance." 249 Kan. at 641.

In construing the language of the trust instrument, this Court reasoned:

"Stripped down, the provision states the Trustees shall pay the net income and, in addition, may pay from the principal. The payment of the net income is not tied to any determination of need as are payments from the principal.
. . . .
"True, the term 'in their uncontrolled discretion' is used in the provisions relating to the payment of income and principal, but its usage in payment of income provisions is inconsistent with the 'shall pay' language except perhaps as to the form of the payment. . . . 'Shall pay' so interpreted results in the payment of income not being a discretionary trust provision." 249 Kan. at 641-42.

The court concluded that the income of the trust was a resource available to Jackson but that the principal was not.

Although in *Jackson II* this court relied primarily upon the usage and meaning of the two terms "shall" and "may," the court also raised legitimate social policy concerns in stating that

"[p]ublic assistance funds are ever in short supply, and public policy demands they be restricted to those without resources of their own." 249 Kan. at 644. While reliance on such public policy is appropriate in an applicable case, nothing in *Jackson II* indicates or implies that such policy overrides the intent of a testator or settlor if a discretionary trust is established.

SRS maintains that *Jackson II* is controlling of this case. Specifically, SRS argues that the phrase "as my trustee deems advisable" in the Myers trust is inconsistent with the language of "shall pay." SRS contends that under the holding in *Jackson II*, the "shall pay" language should control, limiting the trustee's discretion to how and when payments are to be made. SRS maintains that the language in the Myers will creates a support trust, requiring the trustee to inquire into and provide for the basic support needs of the beneficiary.

In reaching its conclusions, SRS reads the questioned language of the will as if the words "shall" and "pay" must be read together without consideration of the subsequent language "as my trustee deems advisable." We are not convinced such conclusion is justified when all the language is read and considered together.

Myers' reliance on *Jackson II* is based upon obvious differences in not only the language of the Jackson and Myers trusts but also the manner in which similar language in the two documents was used. Both trusts use discretionary language, "as my trustee deems advisable" here, and as the trustee "may determine is necessary" in the Jackson trust. Also, both trusts use the nondiscretionary term "shall" and in addition the Jackson trust used the word "may" in referring to payments from principal. Unfortunately, here the similarities end. Unlike the Jackson trust, the Myers language regarding income and principal is contained in the same sentence. Also, the nondiscretionary language, "shall", and the discretionary language "as my trustee deems advisable", occur in the same sentence. Thus, unlike the Jackson trust, the payment of both income and principal is tied to a determination of need and to the discretionary language "as my trustee deems advisable."

This court first recognized the validity of discretionary trusts in *Watts v. McKay*, 160 Kan. 377, 162 P.2d 82 (1945). The issue presented in *Watts* was whether the plaintiff, a divorced wife

whose former spouse was a beneficiary of a trust, could compel the trustee to satisfy a judgment for alimony. In concluding that the trust was discretionary in nature, the court cited with approval the Restatement of Trusts § 155(b) (1935):

" 'If by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal. . . . A trust containing such a provision as is stated in this section is a 'discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support.' " 160 Kan. at 384.

In *Watts,* the trust provision in question read:

" 'I hereby direct such trustees to pay said Corwin Grant Watts, at such times as to them may seem necessary, such sums of money as shall in their judgment be necessary for the proper maintenance, support and education of said Corwin Grant Watts.' " 160 Kan. at 378.

In concluding that the will in *Watts* established a discretionary trust, this court held:

"Where, by the terms of a testamentary trust, legal title is vested in the trustee with full power to manage, control, sell and reinvest principal and income, and to pay to the beneficiary from time to time such sums as to the trustee seem necessary for the beneficiary's maintenance, support, and education, and the trustee is authorized and directed to turn the trust estate over to the beneficiary only when in his judgment and discretion the beneficiary is capable of handling it, the corpus of the estate rightfully retained in the hands of the trustee cannot be reached by the divorced wife of the beneficiary to satisfy a judgment for alimony." 160 Kan. 377, Syl. ¶ 1.

The Court of Appeals, in addition to its reliance on *Jackson II,* also cited *Watts* in support of its holding that the Myers trust is discretionary. Myers also relies heavily upon the decision in *Watts.* Conversely, SRS argues that any reliance on *Watts* is misplaced. SRS attempts to ignore the significance of *Watts* by distinguishing the facts of the case. However, while the facts of *Watts* and the instant case are vastly different, the language used is quite similar. Both trusts include nearly identical discretionary language ("as my trustee deems advisable" and "may seem necessary") and identical nondiscretionary language ("shall"). Additionally, both trusts tie the terms together in one sentence based upon a determination of need. The Watts trust language of "may

seem necessary" appears to apply to the determination to make payments whereas the amount of said payments are tied to the "shall in their judgment be necessary" language.

SRS also relies upon *Godfrey v. Chandley,* 248 Kan. 975, 811 P.2d 1248 (1991), asserting in its brief "where a trust provision directs the trustee to pay the net income of the trust to a named beneficiary as is necessary for her support, health and maintenance . . . , the trustee *shall* pay the beneficiary's necessary expenses without consideration of the beneficiary's independent income." The Chandley trust provided for the care and support of the testator's widow and the applicable language read:

"B. The main purpose of the trust is to provide for the support, health and maintenance of my wife, PEGGY CHANDLEY, during her lifetime. The trust estate shall pay, monthly or at such intervals as may be agreed upon by the Trustee and my Wife, during the period of the trust such portion of the net income from the trust as may be necessary for her support, health, and maintenance. There shall be no invasion of principal." 248 Kan. at 978.

The widow, Peggy Chandley, sought payment from the trustee of all "sums needed or desired by her for support, health and maintenance." There was no discretionary provision in the trust language relating to the duty to pay and apparently Mrs. Chandley had personal income which could pay some or all of her costs of living. We held:

"Under the facts of this case, the testator's intent can be ascertained solely from the language of the testamentary trust. A trust provision which directs the trustee to pay the net income of the trust to a named beneficiary as is necessary for her support, health, and maintenance is not ambiguous. The trustee shall pay the beneficiary's necessary expenses without consideration of the beneficiary's independent income." 248 Kan. 975, Syl. ¶ 4.

The reliance of SRS upon *Chandley* is misplaced. There was no language in the Chandley trust which vested discretion in the trustee as to whether to pay income and the only limitation was based upon what was necessary. The trustee was directed to pay "such portion of the net income from the trust as may be necessary for her support, health, and maintenance." The court stated:

"We hold the trustee shall pay Peggy support, health, and maintenance for the period of her natural life irrespective of her individual income. The

testator obviously intended to provide maintenance for his wife for her life. His provision is limited only by what is necessary." 248 Kan. at 982.

While all of the foregoing cases cited and relied upon by one or both parties are instructive, they are not determinative of the trust language now before this court. They do illustrate that although there are certain guiding principles and rules to be applied by any court, in the final analysis each case depends upon its own particular facts and language. The same may be said of the cases from other jurisdictions cited by the parties in support of their respective arguments. As we stated in *In re Estate of Lehner,* 219 Kan. 100, 103, 547 P.2d 365 (1976): "Since each case must stand on its own peculiar facts any guidance to be gained by a review of prior cases is necessarily of a limited nature."

We now turn again to the specific language and intent of the Myers trust. In examining the language in the will of Caroline H. Myers it appears that she established the trust primarily for the care and support of her son. Specifically, the instrument states, "my trustee shall hold, manage, invest and reinvest, collect the income there from [*sic*] any [*sic*] pay over so much or all the net income and principal to my son as my trustee deems advisable for his care, support, maintenance, emergencies and welfare."

SRS contends that the word "shall" applies equally to the management of the trust, and the direction to pay, as well as to the language establishing the purposes for which the trust funds are to be paid. However, as Myers maintains, it is arguable that the word "shall" only applies to holding, managing, investing and reinvesting, and the collection of income; and that the balance of the sentence gives the trustee complete discretion to determine whether funds are to be paid out for Myers' support and maintenance.

The trial court in determining that the Myers will established a discretionary trust concluded:

"The trust created pursuant to the Will of Caroline H. Myers, in which Darrell E. Myers, Jr. is the beneficiary, is a discretionary trust. The trust provides that the trustee 'shall . . . pay over so much or all the net income and principal as (it) deems advisable' for the care, support, maintenance, emergencies and welfare of Mr. Myers. It is clear that the trustee has discretion as to what, if any, of the trust funds are to be paid to or for the benefit of Mr. Myers. The Court is not persuaded by the argument of Respondent that the word 'shall' mandates the trustee to make payments

to Mr. Myers. Once the trustee decides, in its discretion, to release funds to Mr. Myers, it is at that point that it 'shall' make the payment; until such discretionary determination is made, however, the trustee is under no duty to pay any portion of the net income or principal to Mr. Myers. The trustee is given the discretion to pay over 'so much or all' of the trust funds to Mr. Myers, which clearly indicates that the trustee is under no duty to pay a specific sum or any sum at all. It is therefore the conclusion of the Court that the trust established by Caroline H. Myers is a discretionary trust and not an 'available resource' that can be used to determine eligibility for state assistance, until such trust funds are actually paid to and received by Darrell E. Myers, Jr."

We agree with the trial court's reasoning. The Myers trust directs the trustee to pay out so much of the income and principal as, in the trustees' discretion, it deems advisable for Myers' support. We conclude this language creates a discretionary trust. The nondiscretionary language of "shall" pertains primarily to the management functions of the trust and does not control or override the discretionary language of "as my trustee deems advisable," which pertains to whether payment of net income or principal will be made at all and, if so, the amount and purpose of any such payment. Neither the beneficiary nor any creditor can compel the trustee to pay any trust income or principal to the beneficiary, and SRS may not consider the trust assets to be resources available to Myers in determining whether Myers qualifies for medical assistance.

Our determination would appear to be consistent with the intent of Caroline H. Myers. In her will she directs the trustee at the death of her son to distribute "the principal and any undistributed net income" to the remaindermen. This language indicates that Caroline H. Myers did not presume that the trust principal would necessarily be exhausted. The record reveals that Myers was receiving public assistance prior to the death of his mother and she undoubtedly was aware of such assistance. At the time of this action, Myers was a resident of Johnson County Residential Care Facility. The record indicates that in 1991, the daily charge for Myers' care was $75 and there was additional monthly expense of approximately $600 for prescription medications. At that rate of expense, the trust fund would be exhausted in less than three and one-half years. We do not believe that

exhausting the trust funds in this manner would be consistent with the purpose of the Myers trust.

At the time of Caroline H. Myers' death, her son was 50 years of age. The Myers trust was established to assist in the care and support of Myers during his "lifetime." This purpose cannot be met by a complete exhaustion of the trust assets in a short period of time or if complete discretionary authority was not placed in the trustee. Because the Myers trust is discretionary in nature, the trustee is allowed complete and uncontrolled discretion to allocate trust funds if and when it deems advisable. Only if it can be demonstrated that the trustee is abusing its discretion by acting arbitrarily, dishonestly, or improperly may the trustee be required to distribute funds. See *Jennings v. Murdock,* 220 Kan. 182, 201, 553 P.2d 846 (1976).

The judgment of the Court of Appeals affirming the judgment of the district court is affirmed. The judgment of the district court is affirmed.