(906 P.2d 174)

No. 73,632

MARGARET A. SIMPSON, *Appellee*, v. STATE OF KANSAS, DEPARTMENT OF SOCIAL· AND REHABILITATION SERVICES, *Appellant*.

Opinion filed November 22, 1995.

*Reid Stacey*, of Kansas Department of Social and Rehabilitation Services, of Topeka, for the appellant.

*Terry D. Criss*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, and *Lloyd C. Bloomer*, of Bloomer, Bloomer & Bloomer, of Osborne, for the appellee.

Before LEWIS, P.J., RULON, J., and MARION W. CHIPMAN, District Judge Retired, assigned.

LEWIS, J.: Margaret A. Simpson resides in a care home in Osborne. After admission to the home, Margaret applied for public medical assistance. Her application for assistance was denied by a Social and Rehabilitation Services (SRS) hearing officer and by the State appeals committee. These denials were appealed to the trial court, which reversed the decision of the administrative agency and granted Margaret's application for benefits. SRS appeals. The question on appeal is whether Margaret's status as beneficiary of a discretionary trust makes her ineligible for public medical assistance.

Margaret is the daughter of Bessie J. Eastman. In 1977, Bessie created "the Eastman Trust," a revocable inter vivos trust for the sole benefit of Bessie. Upon Bessie's death in 1989, the Eastman Trust was, by its terms, divided into three separate irrevocable trusts. One of these trusts is the trust involved in this lawsuit. We will refer to it in this opinion as the Trust.

The principal asset of the Eastman Trust was real estate, approximately 400 acres of farmland and a lot in the city of Osborne. The Trust in this case now owns an undivided one-third interest in that real estate. The other undivided two-thirds interest is owned by the two other trusts created by the Eastman Trust after Bessie's death. These two trusts are not involved in this appeal.

The trustees of Margaret's separate trust have refused to make distributions on her behalf. Margaret argues that because of this fact, the Trust assets are not available to her and should not disqualify her from receiving public assistance.

SRS regulations permit a recipient of assistance to retain no more than $2,000 in nonexempt assets. The value of the Trust in this case is approximately $35,000. An income maintenance worker for SRS denied Margaret benefits due to "excessive resources." This amounts to a decision that all of the Trust's assets were available to Margaret and that the Trust was "an available resource." Margaret counters that the trustees have absolute discretion in making distributions, that she has no control over their actions, and that the Trust assets are not "available" to her.

The hearing officer for SRS next considered the question of Margaret's eligibility. He also denied her application, but did so

because Margaret "has failed in her responsibility to meet her own needs insofar as she is capable." Additionally, he found she had failed to replace the trustees with trustees more sensitive to her needs. This decision is obviously based on a conclusion that Margaret has the authority to remove and replace trustees at will.

The State appeals committee then affirmed the decision of the hearing officer. Margaret appealed to the trial court.

The trial court reversed the decision of the administrative agencies and held that Margaret was eligible for assistance. In doing so, the trial court held that the Trust was not an "available resource" and did not focus on whether Margaret had the authority to replace the trustee. The trial court reasoned as follows:

"The Court has reviewed the Trust, reviewed the decision of [*Myers v. Kansas Dept. of SRS*, 254 Kan. 467, 866 P.2d 1052 (1994)], and reviewed briefs filed by both sides. The Court finds that the Eastman Trust was a discretionary trust. It was not funded by the assets of Margaret Simpson, and it was funded while she was an adult. The Court finds that the trustees can only be removed for cause. They are not removed for any particular reason. This is a discretionary trust in nature and the trustees have the right to distribute assets as they deem appropriate.

"Margaret Simpson is not the only beneficiary under this trust, there are other beneficiaries. The Court finds the Trust is not a party to this action, and the Court has no jurisdiction over the Trust, as they've not been named a party, nor have the trustees been named. The Court is not aware of any petition being filed in court to remove or replace any trustees. The Court finds that the hearing officer was in error in finding this trust was an available resource. The Court finds a discretionary trust, that Margaret Simpson is excluded from voting on herself on the trust, the other two trustees have not distributed any assets to her. At this time, it's not an available resource as defined under the rules, so therefore the Court would find that Margaret Simpson is entitled to the benefits, effective August 20th, 1993."

SRS appeals from this decision of the trial court. As we view the issues and the record, there are three questions:

(1) Is the Trust an available resource?
(2) Does Margaret have the authority to replace the trustees?
(3) Is Margaret obligated to institute court action to either replace the trustees or force them to make distributions on her behalf?

## AVAILABLE RESOURCE

K.A.R. 30-6-106(c) (1993 Supp.) provides:

"(1) Resources shall be considered available both when actually available and when the applicant or recipient has the legal ability to make them available. A resource shall be considered unavailable when there is a legal impediment that precludes the disposal of the resource. The applicant or recipient shall pursue reasonable steps to overcome the legal impediment unless it is determined that the cost of pursuing legal action would be more than the applicant or recipient would gain, or unless the probability of success in the legal action would be minimal for the applicant or recipient.

"(2) For the purpose of this subsection, a revocable or irrevocable trust shall be considered available to the applicant or recipient up to the maximum value of the funds which may be made available under the terms of the trust on behalf of the applicant or recipient if:

(A) The trust is established by the applicant, the recipient, the applicant or recipient's spouse, or the applicant or recipient's guardian or legal representative who is acting on the applicant or recipient's behalf;

(B) that applicant or recipient is a beneficiary; and

(C) the trustees are permitted to exercise any discretion with respect to distribution to the applicant or recipient."

The Trust in this case was not "established by the applicant, the recipient, the applicant or recipient's spouse, or the applicant or recipient's guardian or legal representative who [was] acting on the applicant or recipient's behalf." It was established by Margaret's mother, Bessie, in 1977 for her own benefit and after her death for the benefit of her children and grandchildren. The money and property which funded the Trust came from Bessie, not Margaret; it was created when Margaret was an adult, and there is no indication that in creating it, Bessie did so on behalf of Margaret. The Trust is clearly not an available resource under subsection (2) of the regulation quoted above.

The next question is whether the resources of the Trust are actually available to Margaret. Under the terms of the trust document, the funds are not available to Margaret. It creates a group of beneficiaries consisting of:

(1) Margaret

(2) Margaret's spouse

(3) Margaret's issue or the spouse or spouses of Margaret's issue. The trustees are required to distribute Trust income and assets to any one or more of this group of beneficiaries in such amounts as the trustees "in their absolute discretion" may determine from time to time. The instrument goes on to provide: "[T]he Trustees shall have the *absolute discretion,* at any time and from time to time, to make unequal payments or distributions to or among any one or more of said group *and to exclude any one or more of them from any such payment or distribution."* (Emphasis added.)

We cannot imagine a better example of a discretionary trust. No one beneficiary of the Trust has the *right* to any distribution. The trustees have *absolute discretion* as to whom they will make distributions and may exclude any one or more of the beneficiaries from any payment or distribution. The discretion placed in the trustees is total and absolute.

Margaret has no control over distributions to herself. The Trust provides that a beneficiary who is also a trustee *may not vote on distributions to himself or herself.* When any beneficiary of the Trust, other than the donor, is acting as trustee, "the other Trustee or Trustees *shall have the sole power to determine whether any discretionary payment or distribution from this trust shall be made, directly or indirectly, to or for the benefit of such beneficiary."* (Emphasis added.)

This issue is controlled by the recent decision of our Supreme Court in *Myers v. Kansas Dept. of SRS,* 254 Kan. 467, 866 P.2d 1052 (1994). The trust in that case provided: " *'During my son's lifetime, my trustee shall hold, manage, invest and reinvest, collect the income there from [sic;] any [sic] pay over so much or all the net income and principal to my son as my trustee deems advisable for his care, support, maintenance, emergencies and welfare.'* " 254 Kan. at 469.

The value of the Myers trust was $110,000, and SRS sought to have it declared an available resource. The court held that the language quoted above created a discretionary trust and not an available resource. The language utilized in granting discretion to the trustees in this case is even broader than that used in *Myers.* To give a trustee "absolute discretion" is a grant of uncontrolled

discretion over which we have no control. We hold in concert with *Myers* that the Trust is clearly a discretionary trust and not an available resource under K.A.R. 30-6-106(c) (1993 Supp.).

SRS suggests that to permit Margaret to draw public assistance so that the Trust corpus may be preserved for future generations is not in keeping with public policy. This may well be true, but we do not believe it to be our function to eliminate the discretionary trust as a valid instrument. This type of trust was first recognized in Kansas over 50 years ago. *Watts v. McKay*, 160 Kan. 377, 162 P.2d 82 (1945). Since that time, the discretionary trust has been used by enumerable donors to pass along assets to family members while still retaining a measure of control and at the same time preserving such assets. It is not unusual to see discretionary trustees "cutting off" beneficiaries who qualify for public assistance to preserve the corpus for future generations. We are not disposed to disallow the use of a discretionary trust because doing so would advance "public policy." As our Supreme Court said in *Myers*:

"Although in *Jackson II* this court relied primarily upon the usage and meaning of the two terms 'shall' and 'may,' the court also raised legitimate social policy concerns in stating that '[p]ublic assistance funds are ever in short supply, and public policy demands they be restricted to those without resources of their own.' 249 Kan. at 644. While reliance on such public policy is appropriate in an applicable case, nothing in *Jackson II* indicates or implies that such policy overrides the intent of a testator or settlor if a discretionary trust is established." 254 Kan. at 472-73.

We agree with that expressed philosophy.

SRS argues that surely it was not the intent of the donor to leave her daughter to rely on public assistance while funds remained in the Trust. This argument is without merit.

The settlor of the Trust is long dead, and we can only speculate as to her intentions. Her Trust and the words which comprise it remain. Those words do not support the argument that surely the trustee would desire exhaustion of the Trust corpus prior to public assistance. Had this been her intent, she could have said so. She did not. Instead, she gave the trustees *absolute discretion as to whether to make distribution without qualifying that discretion to any degree*. As we ascertain the intent of the settlor from the four

corners of the instrument, it appears to have been to vest absolute discretion in the trustees.

In addition, we note the Trust corpus in this case and is an undivided one-third interest in certain real estate. The other two trusts share the real estate in question and own the other two-thirds interest. As a practical matter, the only way to reach the value of the corpus of this Trust is to force a sale of the real estate, which would potentially adversely affect the function of the other two trusts. We are unable to believe that the donor would have intended such a result.

## REMOVAL OF TRUSTEES

SRS contends that Margaret was disqualified from receiving benefits because she had "failed to meet her obligation to meet her own needs." In plain English, this means that SRS believes Margaret has the authority to remove the trustees at her absolute discretion and appoint new trustees who will do as she asks. We do not agree.

There is no question but that K.A.R. 30-6-39 and K.A.R. 30-6-55 require recipients to meet their own needs insofar as they are capable of doing so. If indeed Margaret had the ability to remove these trustees and appoint trustees who would make distributions to her, we believe that she could be required to do so as a condition precedent to receiving benefits. However, as we construe the Trust, Margaret had no such authority.

The issue of whether Margaret is empowered by the Trust terms to replace trustees is governed by the Trust agreement. Construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, Syl. ¶ 1, 840 P.2d 1107 (1992). Consequently, this court owes no deference to the interpretation of the instrument by SRS.

SRS insists that there is language within the Trust instrument which authorizes Margaret to replace the trustees.

We do not agree with SRS in its interpretation of the agreement. We see nothing in the Trust provisions to give Margaret the discretion of removing the trustees. "The intent of a donor or testator

is not to be determined from a single clause standing alone, but from the four corners of the instrument." *Jennings v. Murdock,* 220 Kan. 182, Syl. ¶ 7, 553 P.2d 846 (1976).

The trustee gives Margaret the following powers with regard to designation and appointment of trustees: (1) Margaret was given the authority to designate the original trustees of her separate trust even if she did not survive Bessie. This could have been done by Margaret delivering an instrument in writing, executed and delivered in her lifetime to the trustees of the Eastman Trust. She could then alter, amend, or revoke that designation by another instrument in writing, also executed and delivered during her lifetime. (2) If Margaret survived Bessie, then Margaret became a trustee and selected the other two.

In this case, option No. (2) was utilized. After Bessie's death, Margaret had the right, along with the other trustees, to select successor trustees in the event of a vacancy.

These are the only provisions in the Trust agreement which give Margaret authority over the trustees. There is nothing in the Trust instrument giving Margaret the power to remove trustees and appoint new ones. Margaret had no power to hire and fire trustees and cannot be denied benefits for failing to do so.

## COURT ACTION

SRS argues that in order to meet her obligation to "meet her own needs," Margaret is required to resort to court action to either remove the trustees or to obtain an order requiring them to make distributions to her or on her behalf.

In Kansas, K.S.A. 59-1711 and K.S.A. 58-2411 authorize a court to remove a trustee who is not performing the duties required under the law or the trust document.

We do not dispute the proposition that a trustee might well be removed for failing to discharge duties required by law or the trust instrument. In this case, however, the trustees have absolute discretion as to whether distributions are to be made and have specific authority to exclude any one or more of the beneficiaries from distributions. By refusing to make distributions to Margaret, the trustees are not abusing their discretion; they are indeed perform-

ing their duties under the Trust instrument, and they would not be subject to removal under 59-1711 or 58-2411.

K.A.R. 30-6-106(c)(1) (1993 Supp.), set forth earlier in this opinion, does not require a recipient to institute legal action where it is determined that the cost would be more than the recipient would gain or where the probability of success is minimal. We consider that in the instant matter the probability of success in a legal action is minimal. We also conclude that given the minimal possibility for success, the cost of pursuing legal action would be considerably more than Margaret might gain from instituting that action.

The powers of the courts to remove a trustee are limited and can be utilized only in extreme circumstances. The *Murdock* court stated:

" '[A] court will not "at the instance of interested parties, interfere with the performance of his duties by the trustee and the exercise of the discretionary powers conferred upon him, unless there is shown bad faith on his part, or a gross and arbitrary abuse of discretion." ' " 220 Kan. at 201.

" 'The removal of a trustee is a drastic action which should only be taken when the estate is actually endangered and intervention is necessary to save trust property.' " 220 Kan. at 211.

"Where the instrument creating a trust gives the trustee discretion as to its execution, a court may not control its exercise merely upon a difference of opinion as to matters of policy, and is authorized to interfere only where the trustee acts in bad faith or its conduct is so arbitrary and unreasonable as to amount to practically the same thing." 220 Kan. 182, Syl. ¶ 1.

"Only if it can be demonstrated that the trustee is abusing its discretion by acting arbitrarily, dishonestly, or improperly may the trustee be required to distribute funds." *Myers*, 254 Kan. at 478 (citing *Murdock*, 220 Kan. at 201).

In this case, there are no facts to justify removal of the trustees. The trustees have the express authority to omit Margaret from any distributions. In doing so, they cannot be said to have been guilty of gross or arbitrary abuse of discretion. Neither can it be said that they were acting arbitrarily, dishonestly, or improperly.

As we indicated earlier, this is a discretionary trust. Such trusts are normally not subject to control by the beneficiary, the creditors of a beneficiary, or a trial court. *Myers v. Kansas Dept. of SRS*, 254

Kan. 467; *Wilcox v. Gentry*, 254 Kan. 411, 867 P.2d 281 (1994); *State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 822 P.2d 1033 (1991).

In Kansas, we have adopted as the law of this state the provisions of Restatement (Second) of Trusts § 155(1) and comment (b) (1957), which provide:

"(1) Except as stated in § 156, if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal."

Comment b:

"A trust containing such a provision as is stated in this Section is a 'discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit."

Under the facts shown, Margaret has no obligation to seek court action as is argued by SRS. The law cited in this opinion makes it clear that such action would be unsuccessful. As is indicated by the Restatement (Second) of Trusts, under a discretionary trust such as is shown in the instant matter, Margaret cannot compel payment to herself or application of Trust funds for her own benefit. It is quite obvious that any suit to either remove the trustees for abuse of discretion or require the trustees to make distributions on behalf of Margaret would be unsuccessful.

We hold that the beneficiary of a discretionary trust cannot be denied public assistance because he or she refuses to bring legal action to remove the trustees for their failure to make distributions to the beneficiary or to obtain a court order to force the trustees to make distributions to the beneficiary.

We also note that the actions of the trustees in this case is action designed to preserve and not endanger the corpus. We do not believe that a trustee of a discretionary trust can be removed for

actions designed to preserve the trust corpus for the other beneficiaries.

In the final analysis, Margaret is the beneficiary of a discretionary trust. She is prohibited from taking part in any decision concerning distributions to herself. The other trustees have the absolute discretion to make distributions and have every right under the instrument to omit making distributions to Margaret. There is nothing Margaret can do to change the nature of the Trust. There is nothing Margaret can do to force the trustees to make distributions to her or on her behalf. This Trust was created by her mother while she was an adult with her mother's money and property. Margaret has no control over the trustees and has no ability to force them to make distributions to her or for her benefit. Margaret cannot be said to have failed to meet her obligation to meet her own needs insofar as she was capable, for her failure to replace the trustees, or for her failure to institute a legal action to do so. The trial court did not err in reversing the administrative decisions of SRS and in determining that Margaret was eligible for public assistance.

Affirmed.