(198 P.3d 172)

No. 100,171

CHARLES L. WHITE, *Appellee*, v. KANSAS HEALTH POLICY
AUTHORITY, *Appellant*.

Opinion filed December 12, 2008.

*Reid Stacey*, of Kansas Health Policy Authority, for appellant.

*Robert L. Feldt*, of Law Office of Robert L. Feldt, P.A., of Great Bend, for appellee.

Before CAPLINGER, P.J., MALONE and LEBEN, JJ.

MALONE, J.: The Kansas Health Policy Authority (KHPA) appeals the district court's decision that a discretionary trust benefitting Charles L. White constituted an exempt resource for the purposes of Medicaid, making White eligible for Medicaid assistance. The primary issue is whether the district court erroneously interpreted the provisions of K.S.A. 2007 Supp. 39-709(e)(3) concerning when a discretionary trust is an available resource for Medicaid eligibility purposes. We agree with the district court's interpretation of the statute, and we affirm the district court's decision in favor of White.

## Factual and procedural background

On August 28, 1997, Charles B. and Ola White (the settlors) created the Charles L. White Trust (White Trust). Charles L. White is the son of the settlors and was born October 2, 1950. White is disabled. The White Trust was a discretionary trust, meaning the settlors delegated complete discretion to the trustee to decide when and how much income or property from the trust would be distributed to the beneficiary. The trust instrument clearly expressed the settlors' intent that the trust be supplemental to other

benefits that White was entitled to receive. The introductory paragraph of Article V of the trust instrument stated:

"This Trust for Charles L. White is created for the express purpose to provide for Charles L. White so long as he shall live during the continuance of this Trust, the extra and supplemental care, maintenance, support and education in addition to and over and above the benefits Charles L. White otherwise receives as a result of Charles L. White's handicap or disability from any local, state or federal government, or from any private agencies, any of which provides services or benefits to handicapped or disabled persons. *It is the express purpose of Settlors that the Trust Estate herein provided for Charles L. White be used only to supplement other benefits received by said Charles L. White*." (Emphasis added.)

Ola White died on September 13, 1998. Charles B. White died on August 7, 2005, and it appears the trust was funded from his estate in December 2005, with approximately $46,000. At about the time the trust was funded, Carol Miller, the settlors' daughter and successor trustee, obtained a modification of the trust instrument in Pawnee County District Court. The trust modification was made to attempt to comply with a 2004 legislative amendment requiring trust instruments to make specific reference to Medicaid, medical assistance, or Title XIX of the Social Security Act, in order for the trust to be an exempt resource for Medicaid eligibility purposes. The trust modification changed the first paragraph of Article V to read:

"1. Trust for Charles L. White is created for the express purpose to provide for Charles L. White, so long as he shall live during the continuance of this trust, the extra and supplemental care, maintenance, support and education in addition to and over and above the benefits Charles L. White otherwise receives as a result of Charles L. White's handicap or disability from any local, state or federal government, or from any private agencies any of which provides services or benefits may include *Medicaid, medical assistance or other benefits under Title XIX of the Social Security Act*. It is the express purpose of Settlor that the Trust Estate herein provided for Charles L. White be used only to supplement other benefits received by Charles L. White." (Emphasis added.)

In 2006, White was living in Barton County, where he was receiving benefits in the form of medical assistance by Home Community Based Service and food stamps. In late 2006, Becky Montgomery, with the Great Bend Social & Rehabilitation Services (SRS) office, conducted a review of these benefits and learned of

the trust. She contacted Jeanine Schieferecke at the KHPA to determine whether the trust should impact White's benefit eligibility. Schieferecke determined:

"[T]he trust was a supplemental trust established by his father, Charles B. White. Although the original trust does include a statement regarding the supplemental nature of the trust, it does not specifically state the trust is supplemental to Medicaid or Title XIX. That's why the trustee has discretion to make the trust available and the assets owned by the trust are countable in full per KEESM 5620. Please note that the trustee did attempt to amend the trust, however, the amendment is not sufficient to meet the requirement of the trust to contain specific contemporaneous language."

Based upon this information, Montgomery counted the trust resources and determined that White was ineligible for benefits. She closed White's case effective January 31, 2007. On January 24, 2007, Miller, acting as White's guardian and conservator, filed a demand for fair hearing with the SRS regarding the decision to stop the medical and food assistance benefits. The hearing was held on March 2, 2007. Montgomery testified and the parties presented their arguments.

On March 20, 2007, the hearing officer issued her initial order. The hearing officer agreed with White's argument that the trust instrument had been properly modified to include the necessary language referring to Medicaid benefits. Thus, the hearing officer determined the denial of benefits was erroneous and reversed Montgomery's determination.

On March 22, 2007, the SRS filed a request for review of the initial order with the KHPA State Appeals Committee (Appeals Committee). The parties submitted briefs and then offered oral arguments at a hearing before the Appeals Committee on September 10, 2007.

On October 9, 2007, the Appeals Committee issued its final order. The Appeals Committee agreed with the SRS's argument that the trust failed to comply with the statutory requirements to be an exempt resource for Medicaid eligibility purposes, because there was no specific reference in the trust instrument to Medicaid, medical assistance, or Title XIX of the Social Security Act, *contemporaneous with the creation of the trust*. Thus, the Appeals Commit-

tee reversed the hearing officer's initial order and determined that White was ineligible for benefits because of the trust.

On October 16, 2007, White filed a petition for judicial review in Barton County District Court. The parties filed briefs repeating their previous arguments. The district court reviewed the briefs, the transcripts of the hearings, and the Appeals Committee's decision. The district court determined no further oral argument was necessary and made its decision based on the briefs and the record.

On January 25, 2008, the district court issued its decision and adopted the hearing officer's findings. The district court concluded that the White Trust had been properly modified to be exempt for Medicaid eligibility purposes and that this modification satisfied the language of the 2004 statutory amendment. The district court also concluded the legislature either did not intend to apply the statute retroactively or else intended to allow existing trust instruments to be modified to conform to the statute. Finally, the district court concluded, in what seems to be an alternative reasoning, that because the trust was not funded until December 2005, the trust modification qualified as "specific contemporaneous language" as required by the statute. The district court reversed the Appeals Committee's final order and ruled that White was eligible for Medicaid assistance. KHPA timely appeals.

### Standard of review

The standard of judicial review of a state administrative agency action is defined by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq. Ninemire v. Kansas Dept. of SRS*, 284 Kan. 582, 585, 162 P.3d 22 (2007). The scope of review under the KJRA is as follows:

"(c) The court shall grant relief only if it determines any one or more of the following:

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c).

Under the KJRA, a district court may not substitute its judgment for that of an administrative agency. The court may only grant relief from a agency action when one of the circumstances set forth in K.S.A. 77-621(c) has occurred. Under K.S.A. 77-621(c)(4), the court may grant relief when the agency has erroneously interpreted or applied the law. In reviewing a district court's decision reviewing an agency action, the appellate court must first determine whether the district court followed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as did the district court. *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005).

### What was the source of the trust funds?

KHPA first argues that because the district court found that the White Trust was not funded until December 2005, the trust funds must have come from White, rather than from the settlors. In order for a trust to be exempt for Medicaid eligibility purposes, the trust must be funded exclusively from resources of a person owing no duty of support to the applicant or recipient. KHPA argues that White received the inheritance from his father's estate and then White or his personal representative placed these funds into the trust, providing the consideration for the trust. Under these circumstances, the trust would constitute an available resource for the purposes of Medicaid eligibility. See *Williams v. Kansas Dept. of SRS*, 258 Kan. 161, 175, 899 P.2d 452 (1995).

KHPA failed to raise this argument at any point below. In fact, the district court found, "[i]t is clear by agreement of all parties in this case [that] the trust was funded exclusively from a resource of

a person who at the time of the creation of the trust owed no duty of support." KHPA never challenged this finding or otherwise raised the issue in district court. Generally, an issue not raised before the district court cannot be raised on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007).

The consequence of KHPA's failure to raise this issue below is that no detailed record was created regarding the funding of the White Trust, since the funding was apparently not at issue. Thus, the record does not definitively establish how the trust was funded. The lack of a record here is directly attributable to KHPA's failure to raise this issue below. Accordingly, we decline to address KHPA's claim that the trust was funded by White, rather than by the settlors, and is therefore not exempt for Medicaid eligibility purposes.

*Did district court erroneously interpret K.S.A. 2007 Supp. 39-709(e)(3)?*

Next, KHPA contends that the district court erroneously interpreted K.S.A. 2007 Supp. 39-709(e)(3) in determining that the modification of the White Trust complied with the 2004 statutory amendment. KHPA argues that the agency correctly applied the statute in determining that the trust instrument did not make specific contemporaneous reference to Medicaid, medical assistance, or Title XIX of the Social Security Act in order for the trust to be an exempt resource for Medicaid eligibility purposes.

K.S.A. 2007 Supp. 39-709(e)(3) provides:

"Resources from trusts shall be considered when determining eligibility of a trust beneficiary for medical assistance. Medical assistance is to be secondary to all resources, including trusts, that may be available to an applicant or recipient of medical assistance. If a trust has discretionary language, the trust shall be considered to be an available resource to the extent, using the full extent of discretion, the trustee may make any of the income or principal available to the applicant or recipient of medical assistance. Any such discretionary trust shall be considered an available resource unless: (1) The trust is funded exclusively from resources of a person who, at the time of creation of the trust, owed no duty of support to the applicant or recipient; and (2) the trust contains specific *contemporaneous* language that states an intent that the trust be supplemental to public assistance and the trust makes specific reference to medicaid, medical assistance or title XIX of the social security act." (Emphasis added.)

As we have discussed, there was no dispute in district court that the White Trust was funded exclusively from resources of a person who owed no duty of support to the trustee. The settlors, as parents of an adult disabled child, owed no legal duty of support to White. There was also no dispute that the original trust instrument contained specific contemporaneous language expressing the settlors' intent that the trust be supplemental to public assistance. However, the original trust instrument, created in 1997, did not make any specific reference to Medicaid, medical assistance, or Title XIX of the Social Security Act. This requirement was not included in K.S.A. 39-709(e)(3) until the 2004 amendment. Miller, the successor trustee, attempted to comply with the statutory amendment by modifying the language of the trust instrument in 2005. However, KHPA argues that the trust modification failed to comply with the statutory requirement because the specific reference to Medicaid, medical assistance, or Title XIX of the Social Security Act was not *contemporaneous* with the creation of the trust.

The specific question here is whether "contemporaneous" in K.S.A. 2007 Supp. 39-709(e)(3) modifies *both* the provisions that follow or whether it is only applicable to "language that states an intent that the trust be supplemental to public assistance." In other words, does the statute require that the original trust instrument contain a specific *contemporaneous* reference to Medicaid, medical assistance, or Title XIX of the Social Security Act, in order for the trust to be an exempt resource for Medicaid eligibility purposes.

Statutory interpretation is a question of law, but special rules apply when an appellate court reviews an administrative agency's interpretation or application of a statute. *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 629, 154 P.3d 1080 (2007).

"The doctrine of operative construction of statutes provides that the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative agency's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative agency as to questions of law is not conclusive and, while

persuasive, is not binding on the courts. [Citation omitted.]" *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 70, 150 P.3d 892 (2007).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe*, 283 Kan. at 77. An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

### *The plain language of the statute*

Our first task is to determine whether K.S.A. 2007 Supp. 39-709(e)(3) is plain enough that we may derive legislative intent without going beyond the statutory language. As previously stated, the Appeals Committee concluded that the statute requires the specific reference in the trust instrument to Medicaid, medical assistance, or Title XIX of the Social Security Act be made contemporaneously with the creation of the trust. Because the White Trust did not include this language until the modification of the trust instrument several years after the trust was created, KHPA contends the trust provision did not satisfy the statute. Thus, according to KHPA, the trust funds constitute an available resource for the purposes of Medicaid, making White ineligible for Medicaid assistance. On the other hand, the district court found that the language in the trust instrument need not be contemporaneous with the creation of the trust. The district court concluded that the White Trust had been properly modified to comply with the statute, thus making White eligible for Medicaid assistance.

The contested portion of the statute states: "Any such discretionary trust shall be considered an available resource unless: . . . (2) the trust contains specific *contemporaneous* language that states an intent that the trust be supplemental to public

assistance and *the trust* makes *specific* reference to medicaid, medical assistance or title XIX of the social security act." (Emphasis added.) K.S.A. 2007 Supp. 39-709(e)(3).

The problem with the interpretation favored by KHPA is that, under a plain reading of the statute, "contemporaneous" does not modify "specific reference to medicaid, medical assistance, or title XIX of the social security act," but it only modifies "language that states an intent that the trust be supplemental to public assistance." The portion contains two independent clauses, each of which expresses a complete thought. The first complete thought is: "[T]he trust contains specific contemporaneous language that states an intent that the trust be supplemental to public assistance." The second complete thought is: "[T]he trust makes specific reference to medicaid, medical assistance or title XIX of the social security act."

The inclusion of "the trust" before the second clause, as well as the second use of "specific," transforms it from a clause that would be modified by "contemporaneous" into a clause that is not. That is, had the legislature intended for "contemporaneous" to modify *both* language requirements, then the provision should have read: "the trust contains specific contemporaneous language that states an intent that the trust be supplemental to public assistance and makes reference to medicaid, medical assistance or title XIX of the social security act." An even better formulation would have been: "the trust contains contemporaneous language that (a) specifically states an intent that the trust be supplemental to public assistance and (b) makes specific reference to medicaid, medical assistance or title XIX of the social security act." However, as phrased, it does not appear possible to properly conclude that "contemporaneous" modifies the specific medicaid reference requirement.

As the district court pointed out, KHPA's interpretation of the statute would lead to an unreasonable result. KHPA argues that White is ineligible for Medicaid assistance because the trust language did not make specific reference to Medicaid, medical assistance, or Title XIX of the Social Security Act contemporaneously with the creation of the trust. This, of course, would have been impossible because this specific language, added to the statute in

2004, was not a requirement when the trust instrument was prepared in 1997. See L. 2004, ch. 146, sec. 1. According to KHPA, the White trust could not possibly be amended in order to satisfy the "contemporaneous" language added to the statute in 2004.

However, K.S.A. 58a-412, which is part of the Kansas Uniform Trust Code, provides in part:

"(a) The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention."

As the district court noted, it was clearly the settlors' intent to make the White Trust a supplemental needs trust. The change in the statute was a circumstance not anticipated by the original settlors of the trust. Accordingly, the trust was modified to include the required statutory language created by the 2004 amendment. KHPA's argument that the White Trust could not be modified to conform with the statutory changes would render the provisions of K.S.A. 58a-412(a) meaningless.

The legislature could have included language within K.S.A. 2007 Supp. 39-709(e)(3), which would have made it clear that the statute was to apply retroactively to any trust created prior to 2004 and that such a prior trust could not be modified to conform with the new statute. This language was not included, which supports the district court's determination that the White Trust was properly modified in accordance with K.S.A. 58a-412(a).

We conclude the district court correctly applied the plain language of K.S.A. 2007 Supp. 39-709(e)(3). Under the plain language of the statute, a discretionary trust instrument must make specific reference to Medicaid, medical assistance, or Title XIX of the Social Security Act, in order for the trust to be an exempt resource for Medicaid eligibility purposes. However, there is no requirement for this language to be contemporaneous with the creation of the trust. Because the statute requires contemporaneous language in the trust instrument only as to the intent for the trust to be supplemental to public assistance, and because the original White Trust included such language, the district court correctly

concluded that the trust did not disqualify White from receiving Medicaid assistance. It does not appear necessary to go beyond the statutory language to ascertain the legislative intent of K.S.A. 2007 Supp. 39-709(e)(3). However, for the sake of argument, if one were to conclude that K.S.A. 2007 Supp. 39-709(e)(3) is ambiguous, we will also examine the legislative history of the statute.

### Legislative history

In 2003, the Kansas Senate formed the President's Task Force on Medicaid Reform. The goal of the Task Force was to "look at the big picture of Medicaid and have discussions on all issues of concern for the future recommendations by the task force." Minutes of the President's Task Force on Medicaid Reform, February 6, 2003. Issues to be considered by the Task Force included prescription costs, nursing home administration, foster care, reimbursement of physicians and hospitals, health care law, role of providers, and civil rights. Minutes of the President's Task Force on Medicaid Reform, February 6, 2003. Notes in the course of the Task Force's meetings show that one of its concerns was changing the eligibility process to address the problem of individuals who make themselves eligible for Medicaid through mechanisms such as trusts, despite having the resources to pay for long-term care. Minutes of the President's Task Force on Medicaid Reform, March 7, 2003, attachment 6 (comments by Robert Harder).

In the Task Force's final report, it recommended that the legislature take immediate action to "[r]equire that discretionary trusts be considered a countable resource for public assistance." Final Report of the President's Task Force on Medicaid Reform, p. iii. The Task Force elaborated later in the report:

"We support legislation that requires discretionary trusts funded by people other than the consumer (or spouse) to be considered a countable resource for public assistance purposes based on the total value of assets contained in such trusts. Refusal to pay for necessary medical care from the trust would be considered a breach of fiduciary duty and contrary to public policy. This would overrule a longstanding District Court case that allowed such trusts to be exempted for Medicaid purposes." Final Report of the President's Task Force on Medicaid Reform, p. 5.

It is not clear to what "District Court case" the Task Force was referring. Perhaps it was referring to *Myers v. Kansas Dept. of SRS*, 254 Kan. 467, 866 P.2d 1052 (1994), as KHPA suggests in its briefs. In *Myers*, the Kansas Supreme Court held that a discretionary trust created by a mother for her disabled son could not be counted as an available resource for the purposes of determining the beneficiary's eligibility for medical assistance from SRS. 254 Kan. at 477.

Senate Bill 272 was introduced in the 2003 legislature to implement some of the changes recommended by the Task Force. Minutes of the Senate Federal and State Affairs Committee, March 28, 2003, attachment 4-2 (testimony of Candy Shively, Deputy Secretary of SRS). Among other things, S.B. 272 amended K.S.A. 39-709(e) by adding the funding and specific language requirements in K.S.A. 2007 Supp. 39-709(e)(3) at issue in this case.

The chair of the Task Force, Senator Stan Clark, testified in favor of the bill before the Senate Federal and State Affairs and the House Committee on Appropriations. He expressed concern about "the contortions families go through to spend, shelter or give away assets so that the State can pick up the tab." Minutes of the Senate Federal and State Affairs Committee, March 28, 2003, attachment 1; Minutes of the House Committee on Appropriations, May 1, 2003.

Representatives of the SRS also spoke in favor of the bill before the committees. They offered SRS's opinion that use of a discretionary trust

"as a shelter from the ordinary Medicaid eligibility rules is an abuse of the trustee's discretion. If a consumer needs medical care, and there is a trust that can pay for that care, the trust and not the State, should be the primary person responsible to pay those costs. This provision would view these trusts as available assets to the extent that the trustee by using his or her full discretion could make any of the income or principal available to the Medicaid consumer." Minutes of the Senate Federal and State Affairs Committee, March 28, 2003, attachment 4-2 (testimony of Candy Shively, Deputy Secretary of SRS); Minutes of the House Committee on Appropriations, May 1, 2003, attachment 4 (testimony of Dennis Priest, SRS Program Administrator).

However, SRS's testimony continued: *"This amendment does not require a parent of an adult disabled child to disinherit the*

*child. Instead, it specifically allows for a parent of an adult child to create a supplemental needs trust by making specific reference in the trust that the parent intends that the trust only supplement Medicaid."* (Emphasis added.) Minutes of the Senate Federal and State Affairs Committee, March 28, 2003, attachment 4-2 (testimony of Candy Shively); Minutes of the House Committee on Appropriations, May 1, 2003, attachment 4 (testimony of Dennis Priest).

S.B. 272 did not pass in 2003. However, the legislature returned to it in 2004 and passed a House substitute for the bill, making no changes to the original version's language creating K.S.A. 2007 Supp. 39-709(e)(3). See L. 2004, ch. 146, sec. 1.

In summary, the legislative history of the 2004 amendments to K.S.A. 39-709 does not clearly indicate whether the legislature intended to require that the specific language regarding Medicaid be contemporaneous with the original trust instrument. On the one hand, the Task Force seemed broadly concerned with making sure that all available resources were counted in making the eligibility determination. On the other hand, the Task Force's concern appeared to be with individuals sheltering *their own* assets in trusts to increase their chances of qualifying for Medicaid. The language of S.B. 272, as well as the testimony of its proponents, clearly indicates that it was the legislature's intent to still allow the parents of an adult disabled individual to create a supplemental needs discretionary trust that would not be counted as an available resource for Medicaid eligibility purposes. We reject KHPA's contention that the legislative history of K.S.A. 2007 Supp. 39-709(e)(3) supports its interpretation of the statute.

We note that in 2008, the legislature enacted Senate Bill 412 which eliminated the specific language requirements of K.S.A. 2007 Supp. 39-709(e)(3). See L. 2008, ch. 12, sec. 1. We do not need to address White's argument that S.B. 412 should be applied retroactively to his trust. We also do not need to address the district court's alternative reasoning that because the White Trust was not funded until December 2005, the trust modification qualified as "specific contemporaneous language" as required by K.S.A. 2007 Supp. 39-709(e)(3).

### Conclusion

The KHPA's position in this case is essentially that it was the intent of the legislature in 2004 to institute a "magic words" requirement that would arbitrarily and irreparably invalidate any supplemental needs discretionary trust created before that date whose settlors had failed to somehow foresee the "magic words" requirement. It would not matter if the trust, such as the one at issue in this case, clearly reflected an intent to supplement the medical assistance provided by a state agency to a person the settlors had no duty to support. The settlors and beneficiaries of such a trust were simply "out-of-luck," because they had failed to anticipate the "magic words" requirement and were not now allowed to amend the trust to comply with the requirement, since such language had to be "contemporaneous" with the creation of the trust.

The plain language and the legislative history of K.S.A. 2007 Supp. 39-709(e)(3) do not support the KHPA's position. There was no apparent intent by the legislature at any time to create this sort of arbitrary trap for a trust that, in all other respects, reflected an intent to supplement the medical assistance provided by a state agency. Based upon the plain language of K.S.A. 2007 Supp. 39-709(e)(3), and also the legislative history of the statute, we agree with the district court that the White Trust was an exempt resource for the purposes of Medicaid, making White eligible for Medicaid assistance. Therefore, we conclude the district court did not err in granting judgment in favor of White and against the KHPA.

Affirmed.